1    JAMES R. TENERO        (SBN 201023)
     SELMAN BREITMAN LLP
2    33 New Montgomery, Sixth Floor
     San Francisco, CA 94105-4537
3    Telephone    :    415.979.0400
     Facsimile    :    415.979.2099
4    Email         :    jtenero@selmanlaw.com

5    SHERYL W. LEICHENGER (SBN 161688)
     SELMAN BREITMAN LLP
6    11766 Wilshire Boulevard, Sixth Floor
     Los Angeles, CA 90025-6538
7    Telephone    :    310.445.0822
     Facsimile    :    310.473.2525
8    Email         :    sleichenger@selmanlaw.com

9    Attorneys for Defendant/Counterclaimant
     Zurich American Insurance Company

10

11                   UNITED STATES DISTRICT COURT

12        NORTHERN DISTRICT OF CALIFORNIA-SAN FRANCISCO DIVISION

13   CROWN ENERGY SERVICES, INC. d/b/a          Case No. 3:19-cv-06334-EMC
14   ABLE ENGINEERING SERVICES and
     CROWN BUILDING MAINTENANCE CO.             DEFENDANT ZURICH AMERICAN
15   d/b/a ABLE BUILDING MAINTENANCE,           INSURANCE COMPANY'S NOTICE OF
                                                CROSS-MOTION AND CROSS-MOTION;
16                Plaintiffs,                    MEMORANDUM OF POINTS &
                                                AUTHORITIES IN SUPPORT OF ZURICH
17        v.                                    AMERICAN'S CROSS-MOTION FOR
                                                SUMMARY JUDGMENT, OR
18   ZURICH AMERICAN INSURANCE                  ALTERNATIVELY, PARTIAL SUMMARY
     COMPANY, ZURICH SERVICES                   JUDGMENT, ON THE GL ISSUE AND IN
19   CORPORATION and DOES 1-50, inclusive,      OPPOSITION TO PLAINTIFFS' MOTION
                                                FOR PARTIAL SUMMARY JUDGMENT
20                Defendants.                    ON THE GL ISSUE

21                                              Date   :   12/10/2020
                                                Time   :   1:30 P.M.
22                                              Ctrm.  :   5 (Via Zoom)
                                                Judge  :   Hon. Edward M. Chen
23                                              Trial  :   None Set

24
     And Related Counterclaims.
25

26

27

28

                ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
                ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

465 46596 4839-4925-7680 v7

Selman Breitman LLP
ATTORNEYS AT LAW

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 10, 2020 at 1:30 p.m. or as soon thereafter as the matter may be heard, before the Honorable Edward M. Chen in the United States District Court, Northern District of California, Courtroom 5 (via Zoom), 17th floor, Defendant and Counterclaimant Zurich American Insurance Company ("Zurich American") will and hereby does move pursuant to Rule 56 of the Federal Rules of Civil Procedure and Civil Local Rule 7-2(a) for an order granting Zurich American summary judgment or, in the alternative, partial summary judgment, with respect to the GL Issue on Plaintiff's first cause of action ("Breach of Contract – General Liability Policies") and fifth cause of action ("Breach of Implied Covenant of Good Faith and Fair Dealing") asserted in the First Amended Complaint.

Zurich American also moves for summary judgment or, in the alternative, partial summary judgment, on its counterclaim for declaratory relief that with respect to the underlying fifty-five actions, Zurich American did not owe Plaintiffs or their additional insured clients or property managers any obligations, including, defense and indemnity, under the Zurich American GL Policies as the self-insured retention was not satisfied.

<u>Zurich American is entitled to judgment with respect to Plaintiffs' causes of action and with respect to Zurich American's counterclaim as a matter of law because:</u>

(1)     With respect to Plaintiffs' first cause of action for breach of contract, the Zurich American's Self Insured Retention endorsement is unambiguous; it is a condition precedent to Zurich American's liability under the policies; and it applies to defense and indemnity of any insured – named insured, additional insured or otherwise insure (*Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal.App.4th 1466 (2010). Furthermore, it is undisputed that in defending and settling (or otherwise paying judgments) on behalf of itself and/or its additional insureds with respect to the underlying actions, Crown *did not* incur and pay $500,000 or more per action. Having paid less than $500,000 per action, Crown failed to satisfy its $500,000 self-insured retention amount under the 2013 SIR Policy and 2014 SIR Policy (the "GL Policies"). In failing to satisfy its $500,000 self-insured retention amount, the condition precedent to Zurich

Selman Breitman LLP
ATTORNEYS AT LAW

1

465 46596 4839-4925-7680 v7

American's liability under the GL Policies was never satisfied. Therefore, Zurich American never owed Crown or any of its additional insureds defense or indemnity with respect to the fifty-five underlying actions. Because Zurich American never owed Crown or any of its additional insureds defense or indemnity with respect to the fifty-five underlying actions, Zurich American did not and could not have breached the GL Policies.

(2)     With respect to Plaintiffs' fifth cause of action for breach of the implied covenant of good faith and fair dealing, the California Supreme Court has held: "It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36.)  With respect to the GL Issue, Zurich American did not breach the 2013 SIR Policy or the 2014 SIR Policy for the reasons summarized in (1) above.  Therefore, as a matter of law, Plaintiffs cannot maintain their fifth cause of action for breach of the implied covenant of good faith and fair dealing against Zurich American with respect to these GL Policies.

This motion is made pursuant to Federal Rules of Civil Procedure, Rule 56, and is based on this Notice of Cross-Motion and Cross-Motion, the Memorandum of Points and Authorities in Support of Zurich American's Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, the Declaration of James R. Tenero and the exhibits thereto (as collated in the Index of Exhibits), the Declaration of Gail Sydow and the exhibits thereto (as collated in the Index of Exhibits), the Request for Judicial Notice and the exhibits thereto (as collated in the Index of Exhibits), on all pleadings and papers filed in this matter, and on such further arguments as may be presented at the hearing on this motion.

/ / /

/ / /

/ / /

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

**TABLE OF CONTENTS**

Page(s)

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.      INTRODUCTION ............................................................................. 1

II.     POLICY NEGOTIATIONS ................................................................ 3

    A.   In Early 2013, Crown Requested Zurich American Quote Liability Insurance Above a $500,000 Self-Insured Retention. ...................... 3

    B.   Zurich American Refused to Modify its Self-Insured Endorsement to Provide First Dollar Additional Insured Coverage. ........................ 9

III.    THE UNDERLYING ACTIONS ....................................................... 11

    A.   Exemplar Underlying Actions Involving ABM ............................... 11

        (1)   The *Chapchian* Action. ................................................... 11

        (2)   The *Neri* Action. ............................................................ 12

        (3)   The *Oliveira* Action. ...................................................... 13

        (4)   The *Wertheim* Action. .................................................... 14

    B.   Exemplar Underlying Actions Involving AES. ............................... 15

        (1)   The *O'Hare* Action. ........................................................ 15

        (2)   The *Benn* Action. ........................................................... 16

IV.     THE SUMMARY JUDGMENT STANDARD ...................................... 17

V.      RELEVANT LEGAL PRINCIPLES ................................................. 18

    A.   Contract Interpretation. ............................................................. 18

    B.   Burden of Proof. ....................................................................... 19

VI.     LEGAL ANALYSIS ........................................................................ 20

    A.   With Respect to the First Cause of Action, Zurich American is Entitled to Summary Judgment, as a Matter of Law, Because the Self Insured Retention Endorsement is Unambiguous, Applies to Additional Insureds, and it is Undisputed Crown Never Paid $500,000 or More Defending or Indemnifying Itself and/or

i

465 46596 4839-4925-7680 v7

Selman Breitman LLP
ATTORNEYS AT LAW

Additional Insureds in any Underlying Case. ..................................................20

    (1)    The Plain Meaning of Zurich American's Self Insured
Retention Endorsement Controls Judicial Interpretation. ................20

        a)    The Forecast Homes Decision. ...................................20

            (1)    The Zurich American Policies Function as
Excess Coverage Above Crown's $500,000
Self-Insurance. ..............................................25

            (2)    By Its Terms, Zurich American's SIR
Endorsement Trumps the Additional
Insured Endorsement. .....................................25

            (3)    By Its Terms, Zurich American's SIR
Endorsement is a Condition Precedent to
Any Coverage. ................................................25

            (4)    Other Provisions Make Plain that Zurich
American Owes No Obligations Until the
Retention is Satisfied. .....................................26

        b)    The Walsh Construction Company Decision.........................27

    (2)    Crown's Only Reasonable Expectation Is That the Zurich
American SIR Endorsement Applies to Additional
Insureds. ...............................................................30

    (3)    Zurich American is not Liable for Losses Resulting From
Crown's Own Negligence in Ordering its Insurance
Coverages. .............................................................33

    (4)    Until the Retention is Exhausted, Zurich American Does
Not Owe Crown or Any Insured a Coverage Decision. ...................34

    (5)    Crown's Interpretation is Strained, Absurd and Derived by
Overstating or Misapplying its Authorities' Holdings. ...................35

B.    With Respect to the Fifth Cause of Action, Zurich American is
Entitled to Summary Judgment on the GL Policies.  Absent a
Breach of the Insurance Policies, Crown Cannot Maintain a Bad
Faith Claim as a Matter of Law. ...................................................37

C.    With Respect to its Counterclaim for Declaratory Relief, Zurich
American is Entitled to Summary Judgment as a Matter of law. .................38

VII.    CONCLUSION...........................................................39

ii

465 46596 4839-4925-7680.v7

1
2
3

**TABLE OF AUTHORITIES**

4

**Federal Cases** <span style="float:right">**Page(s)**</span>

5

*Addisu v. Fred Meyer, Inc.*
  198 F.3d 1130 (9th Cir. 2000) ...............................................................................17

6

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986)...............................................................................................18

7
8

*Evanston Ins. Co. v. American Safety Indem. Co.*
  768 F.Supp.2d 1004 (N.D. Cal. 2011) ..................................................................37

9

*National Fire Ins. Co. of Hartford v. Federal Ins. Co.*
  843 F.Supp.2d 1011, 1017  (N.D. Cal. 2012) .......................................................24

10
11

*Trishan Air, Inc. v. Federal Ins. Co.*
  635 F.3d 422 (9th Cir. 2011) .................................................................................26

12

**California Cases**

13

*AIU Ins. Co. v. Superior Court*
  51 Cal.3d 807 (1990) .......................................................................................18, 19

14
15

*American Way Cellular, Inc. v. Travelers Property Casualty Co. of America*
  216 Cal.App.4th 1040 (2013) ............................................................................3, 26

16

*Aydin Corp. v. First State Ins. Co.*
  18 Cal.4th 1183 (1998) ....................................................................................3, 19

17
18

*Bank of the West v. Superior Court*
  2 Cal.4th 1254 (1992) ............................................................................................18

19

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*
  5 Cal.4th 854 (1993) ........................................................................................19, 36

20
21

*Forecast Homes, Inc. v. Steadfast Ins. Co.*
  181 Cal.App.4th 1466 (2010) ........................................................................ passim

22
23

*Founding Members of the Newport Beach Country Club v.
Newport Beach Country Club, Inc.*
  109 Cal.App.4th 944 957 (2003) ..........................................................................27

24

*General Star Indemnity Co. v. Superior Court*
  47 Cal.App.4th 1586 (1996) ............................................................................36, 37

25
26

*Gibson v. Government Employees Ins. Co.*
  162 Cal.App.3d 441, 452 (1984)  .........................................................................33

27

*Insurance Co. of State of Pennsylvania v. American Safety Indemnity Co.*
  32 Cal.App.5th 898 (2019) .....................................................................................4

28

iii

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

Selman Breitman LLP
ATTORNEYS AT LAW

*Legacy Vulcan Corp. v. Superior Court*
   185 Cal.App.4th 677 (2010) ................................................................36, 37

*Love v. Fire Ins. Exchange*
   221 Cal.App.3d 1136 (1990) ......................................................................38

*Montgomery Ward & Company, Inc. v. Imperial Cas. & Indem. Co.*
   81 Cal.App.4th 356 (2000) ...................................................................36, 37

*Montrose Chemical Corporation v. Superior Court of Los Angeles County*
   9 Cal.5th 215 (2020) ...................................................................................1

*Narver v. California State Life Ins. Co.*
   211 Cal. 176, 181 (1930) ....................................................................28 - 29

*North American Capacity Ins. Co. v. Claremont Liability Ins. Co.*
   177 Cal.App.4th 272 (2009) ...................................................3, 19, 20, 26

*Pardee Const. Co. v. Insurance Co. of the West*
   77 Cal.App.4th 1340 (2000) ......................................................................31

*Powerine Oil Co., Inc. v. Superior Court*
   37 Cal.4th 377 (2005) ..........................................................................19, 30

*Sarchett v. Blue Shield of California*
   43 Cal.3d 1 (1987) .....................................................................................18

*Scottsdale Ins. Co. v. Essex Ins. Co.*
   98 Cal.App.4th 86 (2002) ..........................................................................26

*State of California v. Continental Ins. Co.*
   55 Cal.4th 186 (2012) ..........................................................................19, 33

*TIG Ins. Co. of Michigan v. Homestore, Inc.*
   137 Cal.App.4th 749 (2006) ......................................................................18

*United Farmers Agents Assn., Inc. v. Farmers Group, Inc.*
   32 Cal.App.5th 478 (2019) ........................................................................27

*Waller v. Truck Ins. Exchange, Inc.*
   11 Cal.4th 1 (1995) ...............................................................................2, 37

**Other State Cases**

*Walsh Construction Company v. Zurich American Insurance Company*
   72 N.E.3d 957 (Ind. Ct. App. 2017)...................................................*passim*

**California Statutes**

Cal. Ins. Code, §33...................................................................................3

Cal. Civ. Code, §1636.............................................................................18

Cal. Civ. Code, §1639.............................................................................18

iv

465 46596 4839-4925-7680 v7

Cal. Civ. Code, §1641 ................................................................................................27, 29

Cal. Civ. Code, §1649 ........................................................................................................19

Cal. Civ. Code, §1654 ........................................................................................................19

**Other Authorities**

Fed. R. Civ. P. 56 .....................................................................................................1, 2, 17

Local Rule 7-2(a) ..................................................................................................................1

Selman Breitman LLP
ATTORNEYS AT LAW

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

465 46596 4839-4925-7680 v7

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3          Fundamentally, this action is about Able Building Maintenance ("ABM") and Able

4    Engineering Services' ("AES") (collectively, Crown's) business and litigation decisions.  In its

5    contracts, Crown agreed to defend and indemnify its clients, building owners and property

6    managers, against claims arising from Crown-provided janitorial and building engineering

7    services.  Crown also agreed to buy general liability insurance and to ensure that such insurance

8    covered its clients as additional insureds on a primary, first-dollar basis.[1]   At issue in this

9    litigation are fifty-five underlying bodily injury claims asserted against Crown's clients (and/or

10   Crown itself) by either client invitees (e.g., shopping patrons who slipped and fell) or Crown's

11   own employees who were injured on client premises during the scope of their employment.

12         To honor its contractual requirements, Crown could have purchased a primary insurance

13   policy.  "Primary insurance refers to the first layer of [insurance] coverage, whereby 'liability

14   attaches immediately upon the happening of the occurrence that gives rise to liability.' "

15   *Montrose Chemical Corporation v. Superior Court of Los Angeles County*, 9 Cal.5th 215, 222

16   (2020).  Historically, this was how Crown managed its liability risks.  Under a primary insurance

17   policy, Crown and its additional insured clients received first-dollar defense and indemnity from

18   the insurance company.  However, starting in January 2013, Crown retained insurance broker,

19   Marsh Risk & Insurance Services ("Marsh").  At Marsh's behest, Crown stopped buying primary

20   insurance and started buying insurance from Zurich American over a $500,000 self-insured

21   retention.  "The term 'retention' [ ] refers to a specific sum […] that is the insured's initial

22   responsibility and must be satisfied before there is any coverage under the policy.  It is often

23

---

24   [1]   In its moving papers, Crown states: "Here, all of the claims involve a company that is an 'additional
        insured' under the Zurich policy based on the requirement that Able name that company as an

25       additional insured in its contract with them." (Crown's Memorandum of Points & Authorities in
        Support of Motion for Partial Summary Judgment ("Crown's Moving Papers"), p. 4:14 - 16.)  First,

26       Crown makes no attempt to establish that the involved companies are additional insureds under the
        Zurich American Policies, as it its burden.  (*Id.* at 1, fn 1.)  Regardless, Crown's statement is a half-

27       truth.  These companies are first and foremost Crown's contractual indemnitees and companies to
        whom Crown promised to provide 1st dollar insurance (albeit "self-insurance").

28

1

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

referred to as a 'self-insured retention' or 'SIR.' " *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal.App.4th 1466 (2010).  Under this arrangement, Crown became personally responsible for providing its clients first-dollar defense and indemnity within the $500,000 retention.  Only after the retention was satisfied did Zurich American owe Crown and its additional insureds any obligations – defense, indemnity or otherwise.

In the underlying fifty-five cases, Crown allegedly paid approximately $3.70 million total defending and indemnifying its clients (and/or itself) against tendered claims (or, roughly $68,000 per case).  Significantly, in not one of the underlying cases, did Crown incur and pay $500,000, its self-insured retention amount, or more.[2]  Regardless, Crown now wishes to avoid its bargained-for risk and attempts to thrust these costs on Zurich American.  Crown's principal argument – that the retention only applies to itself, not additional insureds – defies logic and is contrary to the policy negotiations, the plain language of the SIR endorsement, California's statutory rules governing policy interpretation and the seminal decision, *Forecast Homes*, in which the California Court of Appeal, Fourth District, held that a substantially identical endorsement obligated the named insured to satisfy the retention before the insurer owed any obligation to an additional insured.  *Forecast Homes, Inc.*, 181 Cal.App.4th 1466.  *Forecast Homes* is not alone in this conclusion.  *Walsh Construction Company v. Zurich American Insurance Company*, 72 N.E.3d 957 (Ind. Ct. App. 2017) (analyzing a Self Insured Retention endorsement and concluding Zurich American had no obligation to defend or indemnify a general contractor as an additional insured until the named insured satisfied the $500,000 SIR.).

It is the responsibility of Crown, the policyholder, to prove the condition precedent to

---

[2]   In its operative complaint at ¶18, Crown identifies the fifty-five underlying cases and the total amount it paid per case in defense fees, costs and indemnity. (Zurich American Insurance Company's Request For Judicial Notice in Support of Cross-Motion For Summary Judgment, or Alternatively, Partial Summary Judgment, on the GL Issue and in Opposition to Plaintiffs' Cross-Motion For Summary Judgment, or Alternatively, Partial Summary Judgment on the GL Issue ("RFJN"), ¶5, Ex. 71 at ¶18.)

In the underlying *Loftus* action, Crown paid the least amount, $1,753.12.  In the underlying *White* action, Crown paid the highest amount, $481,992.28.  In none of the underlying actions did Crown pay $500,000 (i.e., its self-insured retention amount) or more defending and indemnifying its clients (and itself).

2

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

coverage – satisfaction of the self-insured retention amount – and unless and until Crown is able to do so, Zurich American does not owe any insured defense or indemnity. *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1188 (1998) ("The burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage."); *North American Capacity Ins. Co. v. Claremont Liability Ins. Co.*, 177 Cal.App.4th 272, 289–290 (2009) (condition precedents "neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy."); *Walsh Construction Company*, 72 N.E.3d at 963.

With respect to the fifty-five underlying cases, Crown has not and cannot meet this burden of proof. All of the fifty-five underlying cases are fully resolved. In not one of these cases did Crown incur and pay $500,000 or more in defense fees, costs and indemnity on behalf of itself and/or an additional insured. Therefore, Crown cannot prove the condition precedent to coverage, the self insured retention, was satisfied. Absent such satisfaction, Zurich American did not owe any obligations – defense or indemnity – to any insured. Furthermore, having not breached the GL Policies, Plaintiffs cannot, as a matter of law, prove Zurich American breached the implied covenant of good faith and fair dealing. Crown is not entitled to summary judgment. Respectfully, Zurich American is entitled to summary judgment on the GL Issue.

## II.   POLICY NEGOTIATIONS

### A.   In Early 2013, Crown Requested Zurich American Quote Liability Insurance Above a $500,000 Self-Insured Retention.

In January 2013, Crown appointed Marsh as its insurance broker.[3] (Declaration of James R. Tenero in Support of Zurich American's Cross-Motion for Summary Judgment and in

---

[3]  " 'Insurance broker' means a person who, for compensation and on behalf of another person, transacts insurance other than life, disability, or health with, but not on behalf of, an insurer." Cal. Ins. Code, §33. "An 'insurance broker' is one who acts as a middleman between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and, upon securing an order, placing it with a company selected by the insured or with a company selected by himself or herself; whereas an 'insurance agent' is one who represents an insurer under an employment by it. A broker is, in essence, employed in each instance as a special agent for a single purpose[.]" *American Way Cellular, Inc. v. Travelers Property Casualty Co. of America*, 216 Cal.App.4th 1040, 1052 (2013).

3

Selman Breitman LLP
ATTORNEYS AT LAW

1   Opposition to Plaintiffs' Cross-Motion for Summary Judgment on the GL Issue ("Tenero

2   Decl."), ¶¶ 1 and 2.)  On February 13, 2013, Marsh, on behalf of Crown, asked Zurich American

3   for a general liability insurance quote.  (Tenero Decl., ¶3, Ex. 3.)  Marsh explained to Zurich

4   American:  "Able previously purchased insurance with relatively low retentions and as a result

5   began to trade dollars with the insurance companies they dealt with …"  (Tenero Decl., ¶3, Ex.

6   3.)  Crown's retention for the prior 2012 – 2013 policy period was a $10,000 deductible.[4]

7   (Tenero Decl., ¶4, Ex. 4, and ¶5, Ex. 5.)  Having Crown's "agreement that a larger retention

8   program is in their [Crown's] best interest," Marsh requested that Zurich American quote:

9   | **General Liability:**  Important coverage items to note are the removal of the ccc exclusion based on operations as well as an errors and omissions endorsement that we have included in our specifications. |

10  | We are moving this program to a high retention requesting options of $250,000 and $500,000.  This will be the first year on a retention and as such we anticipate some certificate issues.  Thus, we are requesting a matching deductible policy with a limited named insured endorsement as shown in our specifications.  The client believes that the majority of their contracts will allow for the self insured retention but we want a safety net so we don't have to scramble during the policy period.  (Tenero Decl., ¶3, Ex. 3.) |

15  On March 25, 2013, Zurich American provided Crown a revised quote.  (Tenero Decl.,

16  ¶6, Ex. 6 at MARSH-CES-002894 through MARSH-CES-002937.)  The quote identified Crown

17  as a "General Liability Self-Insurer" within a $500,000 self-insured retention.  (Tenero Decl., ¶6,

18  Ex. 6 at MARSH-CES-002903.)  In the cover email, Gail Sydow, Vice President and Casualty

19  Executive Underwriter, Global Corporate Casualty, Zurich American Insurance Company,

20  explained to John Rolph, Vice President, Marsh Risk & Insurance Services, that "in respect to

21  the GL coverage **including the endorsements** the Zurich's coverage attaches on top of Able's

22  SIR which should give some comfort to the umbrella carrier."  (Tenero Decl., ¶6, Ex. 6 at

23  MARSH-CES-0028942 (bolding added).)  The revised quote enclosed a copy of the Self Insured

24

25  _____

    4   A deductible is "a specific sum that the insured must pay before the insurer owes its duty to
    indemnify the insured for a covered loss. [citation omitted.] A deductible relates only to the
26  'damages for which the insured is indemnified, not to defense costs. The insurer is fully
    responsible for defense costs regardless of the amount of the deductible so long as there is a
27  potential for coverage under the policy." *Forecast Homes, Inc.*, 181 Cal.App.4th 1466, 1474
    (2010); *Insurance Co. of State of Pennsylvania v. American Safety Indemnity Co.*, 32
28  Cal.App.5th 898, 921, reh'g denied (Mar. 25, 2019), review denied (May 22, 2019).

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

Retention endorsement for Marsh and Crown's review. (Tenero Decl., ¶6, Ex. 6 at MARSH-CES-002938 through MARSH-CES-002945.)

On April 1, 2013, Zurich American provided Crown its final quote. (Tenero Decl., ¶7, Ex. 7.) The final quote reiterated that Crown was a general liability self-insurer within a $500,000 self-insured retention and that the Zurich American Policy will provide coverage excess over Crown's self-insurance. (Tenero Decl., ¶7, Ex. 7 at MARSH-CES-000646.) The final quote reiterated that the previously provided Self Insured Retention endorsement remained part of the quoted policy. (Tenero Decl., ¶7, Ex. 7 at MARSH-CES-000645 through MARSH-CES-000648.) Significantly, the Self Insured Retention endorsement provides:

> **Self Insured Retention**
>
> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> This endorsement modifies insurance provided under the:
>
> **Commercial General Liability Coverage Part**
> * * *
> Under the provisions of this endorsement, you are responsible for payment of all or part of "defense costs" in addition to Self Insured Retention (SIR) Amounts.
>
> **SCHEDULE – SELF INSURED RETENTION AMOUNTS**
> * * *
>
> | X Option 1 | $500,000 | Per Incident – You Pay Defense Costs Within SIR |
> |---|---|---|
>
> * * *
> (Tenero Decl., ¶6, Ex. 6 at MARSH-CES-002938.)

As issued, the policies define the term "you" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (Tenero Decl., ¶11, Ex. 11 at ZUR000037 and ¶12, Ex. 12 at ZUR000185.) The first named insured is "Crown Building Maintenance Company". (Tenero Decl., ¶11, Ex. 11 at ZUR000001 and ¶12, Ex. 12 at ZUR000154.) By endorsement, Crown Energy Services, Inc., is also a named insured. (Tenero Decl., ¶11, Ex. 11 at ZUR000025 and ¶12, Ex. 12 at ZUR000310 – ZUR000311.)

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

The Self Insured Retention endorsement also provides:

> The insurance provided by this policy is subject to <u>the following additional provisions, which in the event of conflict with any other provisions elsewhere in the policy, shall control the application of the insurance to which this endorsement applies</u>:
>
> **I.     Your Obligations – Self Insured Retention**
>
> **A.**   The Self Insured Retention (SIR) Amount(s) shown above in the **SCHEDULE – SELF INSURED RETENTION AMOUNTS** of this endorsement apply as follows:
>
> **1.**   **Option 1 Per Incident – You Pay Defense Costs Within SIR**
>
> If **Option 1** <u>is selected, it is a condition precedent to our liability that you make actual payment of "self insured retention" and "defense costs" for each "incident", until you have paid "self insured retention" and "defense costs" equal to **the Per Incident – You Pay Defense Costs Within SIR** amount, subject to the provision of Paragraph **A.5** below.</u>
>                               * * *
>
> <u>If any final judgment and settlement and "defense costs" are less than such Self Insured Retention Amount(s), we shall have no obligation to pay "self insured retention" or "defense costs" under this policy.</u>
>                               * * *

(Tenero Decl., ¶6, Ex. 6 at MARSH-CES-002939 (underlining added).)

The Self Insured Retention endorsement also provides::

> **I.     Your Obligations – Self Insured Retention**
>                               * * *
> **B.**   **Payments By Others**
>           Payments by others, <u>including but not limited to additional insureds or insurers,</u> do not serve to satisfy your "self insured retention" obligations or your obligations for payment of "defense costs".
>                               * * *
> **J.**   **Representations**
>
>           By acceptance of this policy you agree that you will not procure insurance for all or any part of the Self Insured Retention Amounts shown in the **SCHEDULE – SELF INSURED RETENTION AMOUNTS** of this endorsement.  If such insurance is procured, there will be no coverage under this policy as respects those Self Insured Retention Amounts.

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-768 v7

(Tenero Decl., ¶6, Ex. 6 at MARSH-CES-002941 and MARSH-CES-002943 (underlining added).)

The Self Insured Retention endorsement also provides:

> **II.**   **Our Rights and Obligations Excess of the Self Insured Retention**
>
> **A.**   **Self Insured Retention – Your Failure to Respond**
>
> In the event of your refusal to respond to your obligations for the payment of "self insured retention" or "defense costs" for any reason, we shall not make payments to you, nor in any event shall we be required to substitute for you as respects your responsibility for payment of these "self insured retention" or "defense costs".
>
> **B.**   **Damages/Defense Costs Excess of the Self Insured Retention – Per Incident**
>
> We shall be liable only for the amount of covered damages and if applicable, "defense costs" in excess of the Self Insured Retention Amount(s) shown in the SCHEDULE – SELF INSURED RETENTION AMOUNTS of this endorsement […] We shall have no obligations under this policy unless you have satisfied your "self insured retention" obligations.
>
>                  * * *

(Tenero Decl., ¶6, Ex. 6 at MARSH-CES-002943 (underlining added).)

Finally, the Self Insured Retention endorsement defines "defense costs" as:

> **IV.**   **Definitions**
>
> **A.**   **"Defense Costs" means:**
>
> Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical costs containment, declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy. However, the fees, charges and costs of a claim service provider are not considered "defense costs".

(Tenero Decl., ¶6, Ex. 6 at MARSH-CES-002944 (italics added).)

Selman Breitman LLP
ATTORNEYS AT LAW

Per Marsh's request, Zurich American also quoted a "matching" deductible policy for a $10,000 premium. (Tenero Decl., ¶7, Ex. 7 at MARSH-CES-000634.) The purpose of the "matching" deductible policy was "to certify coverage to those of Able's clients who require proof of first-dollar GL insurance." (Tenero Decl., ¶8, Ex. 8.) Neither Crown nor Marsh requested any changes to the Self Insured Retention endorsement. Crown instructed Marsh to bind coverage with Zurich American. (Tenero Decl., ¶9, Ex. 9.) Zurich American issued Policy No. GLO5747214-00 (04/01/2013 – 04/01/2014) to Crown (the "2013 SIR Policy"). (Tenero Decl., ¶11, Ex. 11.) The 2013 SIR Policy was issued with the quoted Self Insured Retention endorsement. (Tenero Decl., ¶11, Ex. 11 at ZUR000058 through ZUR000065.)[5, 6]

On April 4, 2013, Marsh sent Crown the insurance binders. (Tenero Decl., ¶13, Ex. 13.) Regarding general liability coverage, Mr. Rolph explained to Crown, in part, as follows:

> **Commercial General Liability**
>
> The incumbent GL carrier First Mercury firmly elected to non-renewed [sic] the general liability program at any retention level thus on a go-forward basis the GL policy will also be written by Zurich. Listed below are some of the changes which have been made to new GL program:
>
> - Retention has increased from $10,000 to $500,000 (self insured-retention = SIR)
> - If need be Zurich will issue an accommodation GL policy for those certificate holders who absolutely reject the high SIR status on the main policy. The accommodation GL policy will have a high $500,000 deductible and the per occurrence limit will be $1.5M in order to mirror the limit structure of the high SIR policy. The extra $500k limit is needed because the deductible amount is counted within the limit, instead of separate from the limit as is the case in the SIR policy.
> - Only one of the GL policies (Deductible or SIR) will be applicable to any one claim […]
>
> (Tenero Decl., ¶13, Ex. 13 at MARSH-CES-003835.)

---

[5] The 2013 SIR Policy was renewed with the same Self Insured Retention endorsement (the "2014 SIR Policy"). (Tenero Decl., ¶12, Ex. 12 at ZUR000206 through ZUR000213.)

[6] In its Moving Papers at p. 2:14, Crown maintains that it paid $11,734,993.40 in premiums for the 2013 SIR Policy and the 2014 SIR Policy. (Crown's Moving Papers, p. 2:14.) This is drastically incorrect. The 2013 and 2014 SIR Policy premiums totaled $2,360,000. (Tenero Decl., ¶11, Ex. 11 at ZUR000001, and ¶12, Ex. 12 at ZUR000154.)

8

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-768 v7

**B.**   **Zurich American Refused to Modify its Self-Insured Endorsement to Provide**
**First Dollar Additional Insured Coverage.**

During the negotiation process, Marsh voiced concern that certain Crown clients might reject a $500,000 self-insured program. In a March 29, 2013 email to Mr. Mulkerrins/Crown, Mr. Rolph stated: "On a separate but GL related issue, we are anticipating some push back from certain certificate holders who will initially reject the new $500,000 SIR on the GL policy. [...] if the property managers refuse the SIR status then who at Able should be the point person for those problem cases?" (Tenero Decl., ¶14, Ex. 14 at MARSH-CES-003911.) Crown also purchased insurance excess to the Zurich American Policies. To allay that insurer's concerns, Mr. Rolph advised: "We are anticipating that certain (hopefully very few) property manager cert holders will reject Able's SIR status for GL. We, along with Able's help, are going [to] negotiate hard with Able's clients in order to make sure most of the operations will fall on the SIR policy. From Chubb's standpoint the attachment will be the same for each policy, because a $500,000 SIR policy with a $1M limit is equivalent to a $500,000 DED policy with a $1.5M limit from the Umbrella perspective. And Zurich will endorse each policy so any one claim will only apply to one of these policies." (Tenero Decl., ¶15, Ex. 15 at MARSH-CES-004522.)

On April 17, 2013, Crown's client, The Shorenstein Company, purportedly requested that Zurich American change its Self Insured Retention endorsement. (Tenero Decl., ¶16, Ex. 16 at MARSH-CES-003901.) Zurich American refused the request. Rather, Zurich American proposed adding Shorenstein onto the 2013 SIR Policy as a designated insured. (Tenero Decl., ¶16, Ex. 16 at MARSH-CES-003899.) Mr. Rolph clarified that Shorenstein's concern was not *how* it was added onto the 2013 SIR Policy as an additional insured, but that Crown would not defend or indemnify Shorenstein within Crown's $500,000 self-insurance. (Tenero Decl., ¶16, Ex. 16 at MARSH-CES-003899.) In response, Zurich American explained: "Becoming an Additional Insured on the policy grants them [Shorenstein] defense, first by Able within the SIR and subsequently by Zurich once a claim gets into the excess." (Tenero Decl., ¶16, Ex. 16 at MARSH-CES-003898.)

Selman Breitman LLP
ATTORNEYS AT LAW

9

465 46596 4839-4925-7680 v7

Zurich American's response was relayed to Paul Saccone, AES President who, in turn, caused the response to be communicated to Shorenstein. (Tenero Decl., ¶17, Ex. 17 at MARSH-CES-003964.)  Shorenstein remained unsatisfied.  Ms. Deborah Ravetti, Woodruff-Sawyer at Shorenstein Properties LLC, explained that since an additional insured endorsement modifies insurance, not self-insurance, Shorenstein had no guarantee that Crown would, in fact, defend or indemnify it within Crown's $500,000 self-insurance.  (Tenero Decl., ¶17, Ex. 17 at MARSH-CES-003963.)  With her email, Ms. Ravetti proposed an amendment which Mr. Rolph forwarded to Zurich American.  (Tenero Decl., ¶17, Ex. 17 at MARSH-CES-003962 through MARSH-CES-003963.)  Zurich American responded:

> I spoke with one of our underwriting experts about Shorenstein's request that we amend the SIR endorsement to affirm coverage of defense of their claims within Able's SIR.  Please note, though, that the attachment to your email was not that request but rather was a proposed agreement between Shorenstein and Able.
>
> Which leads to our response: Zurich's coverage attaches over Able's SIR and it isn't appropriate for us to guarantee what Able does within its SIR limits.  As you know, in Self Insured Retention situations, the excess carrier does not 'drop down' to pay either loss or expense (such as defense expense) within the Self Insured Retention.  It seems, therefore, that the appropriate place for this matter to be addressed is via an agreement between the 'primary insurer' (in the case of Able's GL program, Able itself) and Shorenstein.
>
> (Declaration of Gail Sydow in Support of Zurich American's Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Cross-Motion for Summary Judgment ("Sydow Declaration"), ¶¶ 1 - 5, Ex. 18.)

While Marsh represented that Shorenstein wanted Zurich American to change its endorsement, it was and is Zurich American's understanding that Shorenstein's proposed amendment was to modify the Shorenstein/AES contract to state:  "Self-insured retention or deductible, including costs of defense, shall not exceed $500,000.  Contractor agrees to defend and indemnify Owner, Owner's Agent, and the other Indemnified Parties within their self-insured retention amount as if such insurance was provided to such Indemnified Parties under a policy of insurance at least as broad as provided under the Commercial General Liability Insurance form issued by the Insurance Services Office (ISO) CG 0001 0196."  (Sydow Declaration, ¶6 at Ex. 19.)  Shorenstein recognized that Zurich American did not owe it a first-

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

1   dollar defense and that such obligation rested firmly with Crown.

2   **III.    THE UNDERLYING ACTIONS**

3       As an upfront summary, in defending and settling claims asserted against itself and

4   additional insureds in six underlying exemplar actions, Crown incurred and paid[7]:

| Underlying Case | Defense Fees / Costs | Indemnity | Total Paid |
|---|---|---|---|
| Chapchian | $72,953.81 | $0.00 | $72,953.81 |
| Neri | $140,622.18 | $200,000.00 | $340,622.18 |
| Oliveira | $23,003.08 | $22,500.00 | $45,503.08 |
| Wertheim | $39,372.85 | $0.00 | $39,372.85 |
| O'Hare | $209,427.27 | $100,000.00 | $309,427.27 |
| Benn | $27,036.82 | $21,250.00 | $48,286.82 |

10       **A.    Exemplar Underlying Actions Involving ABM.**

11       The Parties selected the following four underlying actions as exemplary.

12           **(1)    The *Chapchian* Action.**

13       ABM agreed to provide janitorial services at Park La Brea Apartments located in Los

14   Angeles, California ("PLB"). (Tenero Decl., ¶18, Ex. 20.) Under the contract, ABM agreed to

15   defend and indemnify PLB against claims "on account of or relating to or arising from the work,

16   services […] provided under this Agreement." (Tenero Decl., ¶18, Ex. 20 at CHAPCHIAN

17   00058.) ABM also agreed to purchase general liability insurance with "not less than $1,000,000

18   combined single limit per occurrence" and to add PLB as an "Additional Named Insured" on

19   such insurance. (Tenero Decl., ¶18, Ex. 20 at CHAPCHIAN 00058.)

20       While ascending stairs at the apartment complex, Morteza Chapchian tripped and fell

21   resulting in physical injury to himself. (Tenero Decl., ¶19, Ex. 21 at CHAPCHIAN 00062, ¶9.)

22   In his lawsuit, Mr. Chapchian alleged that PLB negligently maintained or cleaned the staircase

23   and that such negligence caused him to fall. (Tenero Decl., ¶19, Ex. 21 at CHAPCHIAN 00062,

---

[7]   For purposes of this Cross-Motion only, Zurich American does not contest the amounts Crown allegedly incurred and paid in defense and indemnity of the fifty-five underlying actions. However, Zurich American expressly reserves the rights, including the right to contest these amounts and verify proof of payment through discovery, should this Court determine that the Self Insured Endorsement does not apply to additional insureds. Zurich American further recognizes that its calculations of amounts Crown incurred and paid are, in some cases, different from those Crown alleged in its First Amended Complaint. Regardless, all individual totals are less than $500,000.

11

465 46596 4839-4925-7680 v7

**Selman Breitman** LLP
ATTORNEYS AT LAW

Selman Breitman LLP
ATTORNEYS AT LAW

¶9.)  Mr. Chapchian amended his complaint to identify ABM as Doe 4.  (Request for Judicial Notice, ¶1, Ex. 22.)  PLB tendered defense and indemnity of the *Chapchian* action to ABM. (Tenero Decl., ¶20, Ex. 23.)  ABM accepted PLB's tender.  (Tenero Decl., ¶21, Ex. 24.) Ultimately, the *Chapchian* action was dismissed.  (Tenero Decl., ¶22, Ex. 25; Request for Judicial Notice, ¶2, Ex. 26.)  In defending itself and PLB against the *Chapchian* action, ABM incurred and paid a total of $72,953.81 in legal fees and expenses, and zero dollars in indemnity. (Tenero Decl., ¶23, Ex. 27.)

(2)     **The *Neri* Action.**

ABM agreed to provide janitorial services for The Irvine Company.  (Tenero Decl., ¶24, Ex. 28.)  Under the contract, ABM agreed to defend and indemnify The Irvine Company against claims "arising from or relating to (a) performance of the Services […]."  (Tenero Decl., ¶24, Ex. 28 at NERI 01800.)  ABM also agreed to purchase general liability insurance with "not less than One Million Dollars ($1,000,000) […]" and to add The Irvine Company as an additional insured on such insurance.  (Tenero Decl., ¶24, Ex. 28 at NERI 01815.)

While in the lobby of a building owned by The Irvine Company, Ms. Neri slipped and fell resulting in physical injury to herself.  (Tenero Decl., ¶25, Ex. 29 at NERI 01787, ¶Prem.L-1.)  In her lawsuit, Ms. Neri alleged that the Irvine Company negligently maintained the marble floor near the elevators and that such negligence caused her to fall.  (Tenero Decl., ¶25, Ex. 29 at NERI 01787, ¶Prem.L-1.)  Ms. Neri amended her complaint to identify ABM as Doe 1.  (Tenero Decl., ¶26, Ex. 30.)  The Irvine Company tendered defense and indemnity of the *Neri* action to ABM.  (Tenero Decl., ¶27, Ex. 31.)  ABM's defense counsel recommended that ████████████ ████████████████████████████████████████████████████████████  (Tenero Decl., ¶28, Ex. 32 at NERI 00049.)  To that end, ABM's defense counsel, Alison Hurley, Esq., Bremer Whyte, relayed to The Irvine Company's counsel, Scott Smith:  "[A]ble is operating in a different insurance landscape than it was at the time the services contract with the one-sided indemnity provision was signed.  The $500,000 SIR places […] Ables' own funds at risk […]." (Tenero Decl., ¶29, Ex. 33 at NERI 01175.)

465 46596 4839-4925-7680 v7

1    The Irvine Company's tender was carbon-copied to Zurich American. In response,

2  Zurich American advised The Irvine Company: "While it appears, pursuant to the contract and

3  the additional insured endorsement on the Able Policy that the Irvine Company qualifies as an

4  additional insured, Zurich cannot accept the additional insured tender at this time as Able has a

5  $500,000 self-insured retention (SIR). Until this SIR has been exhausted, Zurich has no

6  obligation to defend/indemnify The Irvine Company under its policy as an additional insured."

7  (Tenero Decl., ¶30, Ex. 34 at NERI 00519.)

8    ABM and The Irvine Company ultimately reached an agreement; each would pay for

9  their own defense and indemnity. (Tenero Decl., ¶31, Ex. 35 at NERI 00545.) Ultimately, the

10  *Neri* action settled with a $200,000 contribution from ABM. (Tenero Decl., ¶32, Ex. 36.) In

11  defending itself against the *Neri* action, ABM incurred and paid a total of $140,622.18 in legal

12  fees and expenses and $200,000 in indemnity for a grand total of $340,622.18.

13         **(3)    The *Oliveira* Action.**

14    ABM agreed to provide janitorial services at Arsenal Mall located in Watertown,

15  Massachusetts. ("Arsenal Mall"). (Tenero Decl., ¶34, Ex. 38.) Under the contract, ABM agreed

16  to defend and indemnify Arsenal Mall against claims "in any way relating to or resulting, in

17  whole or in part, from Contractor's performance [of the] services […]." (Tenero Decl., ¶34, Ex.

18  38 at OLIVEIRA 00032.) ABM also agreed to purchase general liability insurance "with a limit

19  of not less than $2,000,000 […]" and to add the Arsenal Mall owner as an additional insured on

20  such insurance. (Tenero Decl., ¶34, Ex. 38 at OLIVERIA 00032.)

21    While walking within a common area, Nina Oliveira slipped and fell resulting in physical

22  injury to herself. (Tenero Decl., ¶35, Ex. 39 at OLIVERIA 00145.) Ms. Oliveira sued ABM and

23  Wilder Companies; the owner of Arsenal Mall. (Tenero Decl., ¶35, Ex. 39.) She alleged that

24  she fell "as a result of a puddle of clear, excess water that had been left on the floor by Able

25  [ABM] after it had mopped the area." (Tenero Decl., ¶35, Ex. 39 at OLIVERIA 00145.)

26    Wilder Companies tendered defense and indemnity of the *Oliveria* action to ABM.

27  (Tenero Decl., ¶36, Ex. 40.) ████████████████████ ABM agreed to defend and

28

13

Selman Breitman LLP
ATTORNEYS AT LAW

Selman Breitman LLP

ATTORNEYS AT LAW

indemnify Wilder Companies. (Tenero Decl., ¶37, Ex. 41.)  Thereafter, the same counsel, David E. Maglio, answered the complaint on behalf of ABM and Wilder Companies. (Tenero Decl., ¶38, Ex. 42 and ¶39, Ex. 43.)  Ultimately, the *Oliveira* action settled, in part, by ABM contributing $22,500 on behalf of itself and Wilder Companies. (Tenero Decl., ¶40, Ex. 44.)  In defending itself and Wilder Companies against the action, ABM incurred a total of $23,003.08 in legal fees and expenses. (Tenero Decl., ¶41, Ex. 45.)  In sum, ABM incurred and paid a total of $45,503.08 defending and settling the *Oliveira* action.

Ms. Oliveira had also sued Carl Warren.  In extricating itself from the litigation, Felicia McDonnell, an Account Executive with Carl Warren & Company, declared: "Carl Warren provides claim administration services to companies nationwide who assume financial risk for all or a portion of such risks.  Sometimes such companies are referred to as 'self-insured'." (Tenero Decl., ¶42, Ex. 46.)  She further declared:  "Able [ABM] contracted with Carl Warren to administer claims solely related to the risk assumed by Able, i.e., its self-insured claims," and that "Able obtained additional insurance from Zurich Insurance Company ('Zurich') to cover risks solely above the amount of risk that Able assumed itself." (*Ibid.*)

### (4)    The *Wertheim* Action.

ABM agreed to provide snow and ice removal services at Roosevelt Field Mall located in Garden City, New York. (Tenero Decl., ¶43, Ex. 47.)  Under the contract, ABM agreed to defend and indemnify mall owner, The Retail Property Trust ("Trust"), against claims "in any way relating to or resulting, in whole or in part, from Contractor's performance [of the] services […]." (Tenero Decl., ¶43, Ex. 47 at WERTHEIM 00001.)  ABM also agreed to purchase general liability insurance "with a limit of not less than $2,000,000 […]" and to add the Trust as an additional insured on such insurance. (Tenero Decl., ¶43, Ex. 47 at WERTHEIM 00001.)

While outside the premises, Deborah Wertheim slipped and fell resulting in physical injury to herself.   (Tenero Decl., ¶44, Ex. 48 at WERTHEIM 00105 – WERTHEIM 00107.) She sued among others, ABM, Simon Property Group [i.e., the property manager] and the Trust. (Tenero Decl., ¶44, Ex. 48.)  She alleged that ABM "was hired and/or retained to perform snow

465 46596 4839-4925-7680 v7

1    removal [...] including the sidewalks, parking lots and driveways thereat" and ABM's

2    negligence in performing such services caused her injury.  (Tenero Decl., ¶44, Ex. 48 at

3    WERTHEIM 00103.)  Simon Property Group and the Trust tendered defense and indemnity of

4    the *Wertheim* action to ABM.  (Tenero Decl., ¶45, Ex. 49.)  Because ABM failed to respond to

5    the tender, Simon Property Group and the Trust filed a third-party complaint against ABM for

6    contractual defense and indemnity and for failure to procure insurance.  (Tenero Decl., ¶46, Ex.

7    50.)  Ultimately, ABM, Simon Property and the Trust obtained summary judgment against

8    Ms. Wertheim.  (Tenero Decl., ¶47, Ex. 51.)  ABM, Simon Property and the Trust thereafter

9    dismissed their remaining claims amongst themselves.  (Tenero Decl., ¶48, Ex. 52.)  In

10   defending itself against the *Wertheim* action, ABM incurred and paid a total of $39,372.85 in

11   legal fees and expenses and paid zero dollars in indemnity.  (Tenero Decl., ¶49, Ex. 53.)

12            **B.    Exemplar Underlying Actions Involving AES.**

13       The Parties selected the following 2 underlying actions as exemplary.

14            **(1)    The *O'Hare* Action.**

15       AES agreed to provide building engineering services for a building located in Sunnyvale,

16   California.  (Tenero Decl., ¶50, Ex. 54.)  Under the contract, AES agreed to defend and

17   indemnify LinkedIn, the building owner, and Cushman & Wakefield, LinkedIn's property

18   manager, against claims "arising out of or caused by the acts or omissions of Contractor [...] or

19   the performance [...] [of] Services under this Agreement [...]."  (Tenero Decl., ¶50, Ex. 54 at

20   O'HARE 00066.)  AES also agreed to purchase general liability insurance "in the minimum

21   amount of $1,000,000.00 per occurrence," and to add LinkedIn and Cushman & Wakefield

22   ("Cushman") as additional insureds on such insurance. (Tenero Decl., ¶50, Ex. 54 at O'HARE

23   00070 – O'HARE 00071.)

24       While on the subject property, an electric gate closed on Ms. O'Hare resulting in physical

25   injury to herself.   (Tenero Decl., ¶51, Ex. 55 at O'HARE 00032, ¶GN-1.)  Among others,

26   Ms. O'Hare ultimately sued AES and Cushman.  (Tenero Decl., ¶52, Ex. 56 and RFJN, ¶3, Ex.

27   57.)  She alleged that AES negligently repaired or maintained the gate. (RFJN, ¶3, Ex. 57, pp 32

28

Selman Breitman LLP
ATTORNEYS AT LAW

15

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

465 46596 4839-4925-7680  v7

1    - 33.)  Cushman tendered defense and indemnity of the *O'Hare* action to AES.  (Tenero Decl.,

2    ¶53, Ex. 58.)  In evaluating the tender, AES' defense counsel relayed to ███████████████

3    ████████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████████

5    █████████     (Tenero Decl., ¶54, Ex. 59.)  Having not responded to the tender, Cushman cross-

6    complained against AES for contractual indemnity and for failure to procure insurance.  (RFJN,

7    ¶4, Ex. 60.)  Regardless, AES and Cushman settled their differences.  AES agreed to reimburse

8    Cushman $45,000 for past defense fees and cost and to assume its defense going forward.

9    (Tenero Decl., ¶55, Ex. 61 at O'HARE 00977.)  AES and Cushman further agreed:



16   Ultimately, the *O'Hare* action settled.  (Tenero Decl., ¶56, Ex. 62.)  On behalf of itself

17   and Cushman, AES contributed $100,000.  (*Id.* at O'HARE 01368.)  In defending itself and

18   Cushman against the action, AES incurred $209,427.27 in legal fees and expenses.  (Tenero

19   Decl., ¶57, Ex. 63.)  In sum, AES incurred and paid a total of $309,427.27 defending and settling

20   the *O'Hare* action on behalf of itself and Cushman.  (*Id.*)

21            (2)    **The *Benn* Action.**

22   AES agreed to provide building engineering services (including, HVAC maintenance) for

23   Turner Construction Company at Governors Island in New York, New York.  (Tenero Decl.,

24   ¶58, Ex. 64 at BENN 01019 (HVAC maintenance).)  Under the contract, AES agreed to defend

25   and indemnify Turner Construction and the property owner against injury "to all persons and

26   entities, whether employees of the Subcontractor [...] arising out of or occurring in connection

27   with the execution of the work."  (Tenero Decl., ¶58, Ex. 64 at BENN 01091 – BENN 01092.)

28

16

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-768 v7

1  AES also agreed to purchase general liability insurance with a $2,000,000 per occurrence

2  liability limit and to add Turner Construction and the property owner as additional insureds on

3  such insurance. (Tenero Decl., ¶58, Ex. 64 at BENN 01092 – BENN 01093.)

4       While on premises and during the course and scope of his employment with AES,

5  Mr. Michael Benn slipped on ice and fell resulting in physical injury to himself. (Tenero Decl.,

6  ¶59, Ex. 65 at BENN 00473 at ¶¶ 18 and 19.) Mr. Benn sued the property owners alleging they

7  negligently maintained the property. (Tenero Decl., ¶59, Ex. 65 at BENN 00471, ¶11 and BENN

8  00473, ¶22.) In turn, the property owners sued AES for contractual defense and indemnity and

9  for failing to procure insurance. (Tenero Decl., ¶60, Ex. 66.) AES denied owing such

10 obligations. (Tenero Decl., ¶61, Ex. 67.) Regarding Zurich American's obligation to defend the

11 property owners, Zurich American advised AES: "The policy requires the 'actual' payment of

12 covered damages and 'defense costs' by the Named Insured up to the 'self insured retention'

13 amount before any obligation will exist under the Policy, including any obligation owed to an

14 additional insured. The 'self insured retention' amount remains unsatisfied. Therefore, ZAIC is

15 not liable to pay any defense costs, incurred by GIC or CNY [i.e., alleged property owners], at

16 this time, and has advised counsel for GIC and CNY of the same," (Tenero Decl., ¶62, Ex. 68 at

17 ZA-BENN-NI00378.) Ultimately, the *Benn* action settled. (Tenero Decl., ¶63, Ex. 69.) AES

18 contributed $21,250 towards the settlement. (Tenero Decl., ¶63, Ex. 69 at BENN 01930.) In

19 defending itself against the *Been* action, AES incurred and paid $27,036.82. (Tenero Decl., ¶64,

20 Ex. 70.) In total, AES incurred and paid $48,286.82 in legal fees and costs defending and

21 settling the *Benn* action. (Tenero Decl., ¶64, Ex. 70.)

22 **IV.   THE SUMMARY JUDGMENT STANDARD**

23      A motion for summary judgment should be granted if "there is no genuine dispute as to

24 any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P.

25 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party, here,

26 Zurich American, bears the initial burden of informing the Court of the basis for the motion and

27 identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or

28

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

1   affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v.*

2   *Catrett,* 477 U.S. 317, 323 (1986).  Where the nonmoving party may have the burden of proof at

3   trial on a particular issue, the moving party need only point out "that there is an absence of

4   evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.  Summary judgment

5   should be entered against a party who fails to make a showing sufficient to establish the

6   existence of an element essential to that party's case, and on which that party will bear the burden

7   of proof at trial. *Id.* at 322-23. "[A] complete failure of proof concerning an essential element of

8   the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

9   **V.      RELEVANT LEGAL PRINCIPLES**

10         **A.      Contract Interpretation.**

11         "While insurance contracts have special features, they are still contracts to which the

12   ordinary rules of contractual interpretation apply." *Bank of the West v. Superior Court,* 2 Cal.4th

13   1254, 1264 (1992).  "Under statutory rules of contract interpretation, the mutual intention of the

14   parties at the time the contract is formed governs interpretation." *AIU Ins. Co. v. Superior Court,*

15   51 Cal.3d 807, 821 (1990); *see also,* Civ. Code, §1636 ("a contract must be so interpreted as to

16   give effect to the mutual intention of the parties as it existed at the time of contracting, so far as

17   the same is ascertainable and lawful.").  "Such intent is to be inferred, if possible, solely from the

18   written provisions of the contract." *AIU Ins. Co.,* 51 Cal.3d at 822; *see also,* Civ. Code, §1639

19   ("when a contract is reduced to writing, the intention of the parties is to be ascertained from the

20   writing alone, if possible; subject, however, to the other provisions of this Title.").  "The 'clear

21   and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless

22   used by the parties in a technical sense or a special meaning is given to them by usage' [ ],

23   controls judicial interpretation." *Id.* at 822.  "Thus, if the meaning a layperson would ascribe to

24   contract language is not ambiguous, we apply that meaning." *Ibid.*  "[W]here the policy is clear

25   and unequivocal, the only thing the insured may 'reasonably expect' is the coverage afforded by

26   the plain language of the mutually agreed-upon terms." *Sarchett v. Blue Shield of California,* 43

27   Cal.3d 1, 15  (1987); *TIG Ins. Co. of Michigan v. Homestore, Inc.,* 137 Cal.App.4th 749, 755

28

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

(2006).   A court may look to the parties' reasonable expectations to reinforce its conclusion regarding the meaning of language it finds unambiguous. *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377, 404 (2005).

"If there is ambiguity, however, it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee [i.e., the insured] understood them at the time of formation." *AIU Ins. Co.*, 51 Cal.3d at 822; *see also*, Civ. Code, §1649 ("if the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *State of California v. Continental Ins. Co.*, 55 Cal.4th 186, 195 (2012). "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 867 (1993).  Only if the policy provision has no "plain and clear meaning" and the insured had no "objectively reasonable expectations" regarding coverage, will "ambiguous language [be] construed against the party who caused the uncertainty to exist." *AIU Ins. Co.*, 51 Cal.3d at 822; *see also*, Civ. Code, §1654.

**B.    Burden of Proof.**

As the Supreme Court observed:  "The burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage." *Aydin Corp.*, 8 Cal.4th 1183, 1188.  This includes establishing that a condition precedent to coverage is satisfied.  *North American Capacity Ins. Co. v. Claremont Liability Ins. Co.*, 177 Cal.App.4th 272, 289–290 (2009).  Satisfaction of the self-insured retention is such condition precedent: "[I]t is a *condition precedent* to our liability that you make actual payment of 'self insured retention' and 'defense costs' for each 'incident,' until you have paid 'self insured retention' and 'defense costs' equal to the Per Incident – You Pay Defense Costs Within SIR amount […].  If any final judgment or settlement and 'defense costs' are less than such Self Insured Retention Amount(s), *we shall have no obligation to pay 'self insured retention' or 'defense costs' under this policy*."

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

1   (Tenero Decl., ¶11, Ex. 11 at ZUR000059 and ¶12, Ex. 12 at ZUR000207.)  " 'A condition

2   precedent refers to an act, condition or event that must occur before the insurance contract

3   becomes effective or binding on the parties [.]' [citation omitted.] In general, 'conditions neither

4   confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured

5   in order to obtain the coverage provided by the policy.'" *North American Capacity Ins. Co.*, 177

6   Cal.App.4th 272, 289–290.

**VI.   LEGAL ANALYSIS**

    **A.   With Respect to the First Cause of Action, Zurich American is Entitled to Summary Judgment, as a Matter of Law, Because the Self Insured Retention Endorsement is Unambiguous, Applies to Additional Insureds, and it is Undisputed Crown Never Paid $500,000 or More Defending or Indemnifying Itself and/or Additional Insureds in any Underlying Case.**

        **(1)   The Plain Meaning of Zurich American's Self Insured Retention Endorsement Controls Judicial Interpretation.**

13       This Court does not write upon whole cloth.  In 2010, the California Court of Appeal,

14   Fourth District, held that a self-insured retention endorsement substantially identical to Zurich

15   American's endorsement is plain and unambiguous.  *Forecast Homes, Inc.*, 181 Cal.App.4th

16   1466, 1480 (holding subcontractor's insurer did not owe additional insured, general contractor

17   Forecast Homes, a defense because the named insured, subcontractor, had not satisfied the self-

18   insured retention amount).  *Forecast Homes* is controlling.

        **a)   The Forecast Homes Decision.**

20       In *Forecast Homes*, Forecast Homes, a housing developer, "contractually required all its

21   subcontractors to defend and hold it harmless against any liability arising out of the

22   subcontractors' work." *Forecast Homes, Inc.*, 181 Cal.App.4th at 1469.  Subcontractors were

23   also required to procure general liability insurance and to add Forecast Homes as an additional

24   insured on that insurance. *Id.* at 1470.  Several subcontractors purchased the required insurance

25   from Steadfast Insurance Company.  *Ibid.*  Thereafter, Forecast Homes was sued for defective

26   construction arising, in part, from the subcontractors' work.  When Forecast Homes sought

27   defense and indemnity from Steadfast as an additional insured under the subcontractors'

28

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

Selman Breitman LLP
ATTORNEYS AT LAW

1  insurance policies, Steadfast denied coverage. *Ibid.* "Steadfast maintained [that] the

2  subcontractor[s] did not pay the policy's self-insured retention (SIR), which was a precondition

3  for coverage. It argued only the named insured, not Forecast, could satisfy the policies' SIR and

4  trigger coverage." *Ibid.*

5  Forecast Homes sued Steadfast for declaratory relief, breach of contract and bad faith.

6  *Forecast Homes, Inc.*, 181 Cal.App.4th at 1473. Steadfast did not dispute that Forecast Homes

7  was an additional insured or that Forecast Homes had incurred defense costs sufficient to satisfy

8  the amount stated in the SIR endorsement. *Id.* at 1473. Rather, Steadfast argued that only the

9  named insured could satisfy the SIR amount and none of the named insureds had, in fact,

10  satisfied the SIR to trigger its defense obligation. *Ibid.* Forecast Homes argued that as an

11  additional insured it could satisfy the SIR through payment of defense costs. *Ibid.* Forecast

12  Homes also argued that the SIR endorsement violated public policy and "rendered the coverage

13  illusory by precluding the additional insured from having a chance to invoke the insurance

14  coverage it expected." *Ibid.* "The trial court agreed [with Steadfast] and concluded the policies

15  were unambiguous, not against public policy, and not illusory." *Id.* at 1470. Forecast Homes

16  appealed and the judgment was affirmed. *Ibid.*

17  The sole issue on appeal "relate[d] to the interpretation of the SIR endorsements,"

18  namely, whether the self-insured retention could be satisfied by the additional insured in order to

19  garner defense and indemnity. *Forecast Homes, Inc.*, 181 Cal.App.4th at 1470.

20  <u>First</u>, in evaluating "who" may satisfy the SIR (i.e., to trigger an additional insured

21  defense), the Court observed that Forecast Homes became an insured under the Steadfast Policy

22  through an additional insured endorsement and that such endorsement amended the Steadfast

23  Policy. *Forecast Homes, Inc.*, 181 Cal.App.4th at 1472.

24  <u>Second</u>, the Court explained that "[t]he term 'retention' (or 'retained limit') refers to a

25  specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied

26  before there is any coverage under the policy. It is often referred to as a 'self-insured retention'

27  or 'SIR.' " *Forecast Homes, Inc.*, 181 Cal.App.4th at 1474. The Court distinguished an SIR from

28

<div align="center">21</div>

465 46596.4839-4925-7680 v7

a deductible: "Unlike a deductible, which generally relates only to damages, an SIR also applies to defense costs and settlement of any claim." *Id.* at 1474. The Court further explained that "[i]t is well recognized that self-insurance retentions are the equivalent to primary liability insurance, and that policies which are subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted." *Ibid.* The Court found this primary/excess distinction "significant" because unlike primary insurers, "defense obligations of excess insurers arise only when primary insurance coverage is exhausted." *Ibid.*

Third, the Court acknowledged that under existing California law "the insured may purchase other insurance to cover the SIR unless the policy clearly requires the insured itself, not other insurers, to pay this amount." *Forecast Homes, Inc.,* 181 Cal.App.4th at 1474. Therefore, the Court concluded "who may satisfy the SIR depends on each policy's express provisions." *Id.* at 1475. Turning to the Steadfast endorsement, the Court observed that the endorsement starts off by stating "you" and "your" refer to the named insured. Next, the first full paragraph, titled "Your Obligations," states "it is a condition precedent to our liability that you [the named insured] make actual payment ... ," and that "payments by others, including but not limited to additional insureds or insurers, do not serve to satisfy the self-insured retention. Satisfaction of the self-insured retention as a condition precedent to our liability applies regardless of insolvency or bankruptcy by you." *Id.* at 1476. Based on this language, the Court concluded: "Because the word 'you' was previously defined to be the named insured, it logically follows the named insured must pay defense costs to satisfy the SIR. This section of the policy regarding who can make the payment to satisfy the SIR is clear and unambiguous." *Ibid.*

Fourth, the Court rejected Forecast Homes' argument that the SIR endorsement was ambiguous. *Forecast Homes, Inc.,* 181 Cal.App.4th at 1476. Forecast Homes pitted one section of the endorsement against the other. Forecast Homes compared Section IV – which defined the term SIR as " 'the amount or amounts' that 'you *or any insured* must pay for all compensatory damages which you *or any insured* shall become legally obligated to pay[,]" *Id.* at 1477 (italics added), with Section I that stated "payments by others, including but not limited to additional

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7681 v7

insureds or insurers, do not serve to satisfy the self-insured retention." *Ibid.* The Court rejected this argument. The Court stated that Section I describes *who* can pay the retention amount and Section IV defines *what* amounts and expenses satisfy the SIR. *Ibid.*

The Court reasoned that the term SIR was broadly worded by design to protect the parties' reasonable expectations:

> This broadly-worded definition was designed to include debts incurred by the additional insured, and not just those obligations belonging to the named insured. This expansion was necessary for the parties' reasonable expectations that lawsuits naming only the additional insured, Forecast, would still be covered by the subcontractor's policy. The endorsement purposefully defined the "amounts" to include debts and obligations arising from Forecast's lawsuit, in which the subcontractors were not named. If Forecast requested the subcontractor to make payments (pursuant to its hold harmless agreement with the developer) this would satisfy the subcontractor's SIR obligation and trigger further insurance coverage for an additional insured, like Forecast. We conclude the purpose of the policy is satisfied by this interpretation of the unambiguous language of the SIR endorsement.
>
> *Forecast Homes, Inc.*, 181 Cal.App.4th at 1478.

<u>Fifth</u>, the Court distinguished the *Vons* decision; a case on which Forecast Homes (and now Crown) relied. *Forecast Homes, Inc.*, 181 Cal.App.4th at 1479. In *Vons*, the issue was whether payments by co-insurers could satisfy USF's SIR endorsement. The *Vons* Court reasoned that because the SIR endorsement expressly subjugated itself to "all of the policy's terms and conditions", including an "other insurance" provision, "Vons as a reasonable insured could read the policy as permitting the use of other insurance proceeds to cover the SIR amount." *Id.* at 1480. The *Forecast Homes* Court rejected this argument because unlike the USF endorsement, the Steadfast endorsement did not subjugate itself to all other policy terms and conditions. "To the contrary, in highlighted language the insured is clearly warned the terms of the endorsement 'shall control' if there is a conflict with other policy language. [...] Thus, under the terms of the Steadfast Policy, the [SIR] endorsement trumps all other provisions." *Ibid;* *accord, Walsh Construction Company*, 72 N.E.3d at 964 ("the SIR endorsement prioritizes its obligations and definitions over any other provision of or endorsement to the CGL policy, stating that, 'in the event of conflict with any other provisions elsewhere in this policy,' the SIR

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

1   endorsement 'shall control the application of the insurance to which this endorsement applies'.")

2       Sixth, the Court rejected Forecast Homes' arguments that the SIR endorsement violated

3   public policy. *Forecast Homes, Inc.*, 181 Cal.App.4th at 1481. Echoing Shorenstein's concerns

4   summarized above, Forecast Homes argued that it "will be left without a defense 'if the named

5   insured decides it does not want Steadfast to defend it, refuses to pay defense fees to trigger the

6   defense obligation, is not named in a lawsuit, or even if it wants to pay defense costs but is

7   financially incapable of doing so...'." *Id.* at 1482. The Court noted that the "record shows the

8   subcontractors had sound reasons for wanting to control whether and when coverage under the

9   policy would be triggered," e.g., to contain insurance costs and to capitalize on lower premiums.

10  *Id.* at 1483. The Court noted Forecast Homes could have required its subcontractors to identify it

11  as a named insured. The Court concluded: "Under these circumstances, public policy does not

12  allow a reviewing court to interfere and change the bargain the parties reached merely because

13  certain recognizable risks come to pass." *Ibid.* That is exactly what Crown is asking this Court

14  to do – change its bargain with Zurich American because certain recognizable risks (notably, its

15  obligation to defend and indemnify clients) came to pass.

16      Finally, the Court rejected Forecast Homes' arguments that the Steadfast Policy provided

17  illusory coverage. *Forecast Homes, Inc.*, 181 Cal.App.4th at 1483. For coverage to be illusory,

18  performance [of the contract must be] "conditional on some fact or event that is wholly under the

19  promisor's [i.e., insurer's] control and bringing it about is left wholly to the promisor's own will

20  and discretion." *Id.*at 1483. The Court reasoned that "the condition of requiring the named

21  insured to pay the [SIR] amount before coverage is triggered is not a fact or event under

22  Steadfast's control or discretion. After the payment is made, Steadfast must cover the named and

23  additional insured." *Ibid.* The Court concluded that the Steadfast Policy was not illusory.

24      In 2012, the Federal District Court for the Northern District of California held that had an

25  insurance policy contained the language examined by *Forecast Homes*, an insurer would not owe

26  an additional insured a defense until the retention was satisfied. *National Fire Ins. Co. of*

27  *Hartford v. Federal Ins. Co.*, 843 F.Supp.2d 1011, 1017 (N.D. Cal. 2012).

28

Selman Breitman LLP
ATTORNEYS AT LAW

24

465 46596 4839-4925-7680 v7

The *Forecast Homes* decision controls the subject issue for the following reasons:

### (1)   The Zurich American Policies Function as Excess Coverage Above Crown's $500,000 Self-Insurance.

The Zurich American SIR endorsement is a self-insured retention.  The endorsement is titled "Self Insured Retention".  Thus, it is treated as primary insurance.  The Zurich American Policies are treated as excess insurance.  As the *Forecast Homes* Court found significant:  "It is well recognized that self-insurance retentions are the equivalent to primary liability insurance, and that policies which are subject to self-insured retentions are 'excess policies' which have no duty to [defend or] indemnify until the self-insured retention is exhausted."  *Forecast Homes, Inc.*, 181 Cal.App.4th at 1474.  Because Crown did not satisfy its $500,000 self-insured retention in any of the fifty-five underlying cases, Zurich American never owed Crown or any additional insured obligations under the policies, including, defense or indemnity.

### (2)   By Its Terms, Zurich American's SIR Endorsement Trumps the Additional Insured Endorsement.

Separate from general legal principles, by its express terms, the Zurich American SIR endorsement provides that it "modifies insurance provided under the: Commercial General Liability Coverage Part."  Also critical to the *Forecast Homes* holding, the Zurich American SIR endorsement plainly states:  "The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any other provision elsewhere in the policy, *shall control the application of the insurance to which this endorsement applies*." (Tenero Decl., ¶11, Ex. 11 at ZUR000059 and ¶12, Ex. 12 at ZUR000207 (italics added).)

### (3)   By Its Terms, Zurich American's SIR Endorsement is a Condition Precedent to Any Coverage.

Under Section I, "Your Obligations – Self Insured Retention", subsection A.1., the Zurich American SIR endorsement provides:  "If Option 1 is selected, *it is a condition precedent to our liability* that you make actual payment of 'self insured retention' and 'defense costs' for each 'incident'[.]"  Option 1 is selected.  (Tenero Decl., ¶11, Ex. 11 at ZUR000058 and ¶12, Ex. 12 at

Selman Breitman LLP
ATTORNEYS AT LAW

25

465 46596 4839-4925-7680 v7

ZUR000206.) " 'A condition precedent refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties....' [Citation.] In general, 'conditions neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy.' [Citation.]" *North American Capacity Ins. Co.*, 177 Cal.App.4th 272, 289–290 (where condition precedent – a contractors warranty endorsement – was not satisfied, insurer did not owe indemnity); *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal.App.4th 86, 97 (2002) (where condition precedent – a contractors warranty endorsement – was not satisfied, insurer did not owe defense); *accord, American Way Cellular, Inc. v. Travelers Property Casualty Co. of America*, 216 Cal.App.4th 1040, 1054 (2013).   Conditions precedent require strict compliance: "strict compliance is required with conditions upon which coverage depends – i.e., those that are 'an element of the fundamental risk insured.' " *Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422, 428 (9th Cir. 2011).   Since Crown did not incur or pay defense fees, costs or settlement monies in amounts totaling $500,000 or more in any one of the fifty-five underlying actions, Crown has failed to satisfy the SIR condition precedent to coverage under the Zurich American Policies.   Having failed to satisfy this condition precedent, Crown is not entitled to summary judgment.

        (4)    **Other Provisions Make Plain that Zurich American Owes No Obligations Until the Retention is Satisfied.**

The Zurich American SIR endorsement contains additional language that plainly communicates Zurich American owes no obligations until the retention is satisfied.

Under Section I, "Your Obligations – Self Insured Retention", subsection A.1. provides: "If any final judgment or settlement and 'defense costs' are less than such Self Insured Retention Amount(s), *we shall have no obligations to pay* 'self insured retention' or 'defense costs' under the policy." (Tenero Decl., ¶11, Ex. 11 at ZUR000059 and ¶12, Ex. 12 at ZUR000207 (italics added).)   This provision is unambiguous.   It communicates to Crown that absent Crown satisfying the self-insured retention, Zurich American does not owe defense, indemnity nor is otherwise liable under the policy.

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

465 46596 4839-4925-7680 v7

Selman Breitman LLP
ATTORNEYS AT LAW

Under Section I., "Your Obligations – Self Insured Retention", subsection B provides that "payment by others, *including but not limited to additional insureds or insurers*, do not serve to satisfy the 'self insured retention' requirements of this endorsement." (Tenero Decl., ¶11, Ex. 11 at ZUR000061 and ¶12, Ex. 12 at ZUR000209 (italics added).)  If this endorsement did not apply to defense or indemnity of an additional insured, then this sentence would be superfluous:  "We strive to 'give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable.' " *United Farmers Agents Assn., Inc. v. Farmers Group, Inc.*, 32 Cal.App.5th 478, 495 (2019); *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944 957 (2003) ("an interpretation rendering contract language nugatory or inoperative is disfavored"); Civ. Code, §1641.)

### b)    The Walsh Construction Company Decision.

While implicit in the *Forecast Homes* decision, the *Walsh Construction* Court expressly and emphatically rejected the argument now raised by Crown; that because the additional insured endorsement is a separate form, the Self Insured Retention endorsement does not apply to additional insureds.  *Walsh Construction Company*, 72 N.E.3d at 963.

The *Walsh Construction* Court reasoned that the SIR endorsement "unambiguously conditions [named insured's] compliance with its provisions as a 'condition precedent to coverage' from Zurich."  *Id.* at 964.  As a condition precedent to coverage, the Court stated: "there is no rational basis to apply the SIR endorsement as a condition precedent to Zurich's coverage of the named insured but not to Zurich's coverage of additional insureds."  *Ibid.*  The Zurich American SIR endorsement before this Court includes identical language.  "If Option 1 is selected, it is a condition precedent to our liability that you make actual payment […]."  (Tenero Decl., ¶11, Ex. 11 at ZUR000059 and ¶12, Ex. 12 at ZUR000207.)  There is no material difference between the word "coverage" and "liability"; for an insurer to have coverage means it is liable for providing policy benefits.

The *Walsh Construction* Court further reasoned (as did the *Forecast Homes* Court) that in plain and unambiguous language, the SIR endorsement prioritized itself over any other policy

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

provision.  The Court stated: "[T]he SIR endorsement prioritizes its obligations and definitions over any other provision of or endorsement to the CGL policy, stating that, 'in the event of conflict with any other provisions elsewhere in this policy,' the SIR endorsement 'shall control the application of the insurance to which this endorsement applies.'"  *Walsh Construction Company*, 72 N.E.3d at 964.  The Zurich American SIR endorsement before this Court includes identical language:  "The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any other provision elsewhere in the policy, shall control the application of the insurance to which this endorsement applies[.]"  (Tenero Decl., ¶11, Ex. 11 at ZUR000059 and ¶12, Ex. 12 at ZUR000207.)  There is no dispute that the SIR endorsement applies to the 2013 SIR Policy and the 2014 SIR Policy.  As such, its terms control application *of the insurance*; not the additional insured endorsement (which, as discussed below) does not provide stand-alone coverage.

Crown's argument that the additional insured endorsement includes an independent, stand-alone insuring agreement is baseless.  (Moving Papers, pp. 9-10:01 and p.12:06 – 16.)  Not one of Crown's cited authorities – such as, *Presley Homes* or *Maryland Casualty* – actually examine a policy that contains a self-insured retention as a condition precedent to coverage.  Crown is comparing apples to oranges.  (Moving Papers, p. 12:06 – 13.)  The subject additional insured endorsement expressly states that it "*modifies insurance* under […] Commercial General Liability Coverage Part".  (Tenero Decl., ¶11, Ex. 11 at ZUR000023 and ¶12, Ex. 12 at ZUR000171 (italics added).)  The modifications are to "Section II – Who Is An Insured" (Crown readily admits in its Moving Papers at page 3:22-23), to add an exclusion, to modify the conditions section, and to "Section III – Limits Of Insurance".  (Tenero Decl., ¶11, Ex. 11 at ZUR000023-24 and ¶12, Ex. 12 at ZUR000171-172.)  There are no modifications to the Policy's insuring agreement.  Crown's stand-alone argument is contrary to California law.  "Taken by itself, this indorsement means nothing.  Of itself, it is not a contract in any sense of the word.  By its terms it refers to the main policy and the application therefor, and, except as specifically excepted in the indorsement, it put the provisions of the policy into force and effect."  *Narver v.*

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

1  *California State Life Ins. Co.* (1930) 211 Cal. 176, 181 (rejecting insured's argument that an

2  endorsement is "a policy of insurance complete in itself and a contract separate and distinct from

3  the main policy.").

4      Crown's argument also violates California's rule of contract interpretation that "the whole

5  of a contract is to be taken together, so as to give effect to every part, if reasonably practicable,

6  each clause helping to interpret the other." (Cal. Civ. Code, §1641.)  The additional insured

7  endorsement also expressly states:  "All other terms and conditions of this policy remain

8  unchanged." (Tenero Decl., ¶11, Ex. 11 at ZUR000024 and ¶12, Ex. 12 at ZUR000172.)

9      Finally, it is unnecessary for the additional insured endorsement to refer to the self-

10  insured retention because the SIR Endorsement is a part of the policy and expressly states that it

11  is a condition precedent to coverage under the policy and that the SIR Endorsement's terms

12  control: "The insurance provided by this policy is subject to the following additional provisions,

13  which in the event of conflict with any other provision elsewhere in the policy, shall control the

14  application of the insurance to which this endorsement applies." (Tenero Decl., ¶11, Ex. 11 at

15  ZUR000059 and ¶12, Ex. 12 at ZUR000207.)  Therefore, the retention applies to Crown and

16  additional insureds equally.

17      As the *Walsh Construction* Court concluded: "Taken together, those provisions

18  unambiguously manifest the intent of the parties to the contracts, Zurich and Roadsafe [i.e., the

19  named insured], for the SIR endorsement to control their relationship such that Roadsafe

20  assumed all costs and liability for the first $500,000 of any claim that might be made under the

21  CGL policy, regardless of whether that claim was against Roadsafe or an additional insured."

22  *Walsh Construction Company*, 72 N.E.3d at 964.  Likewise, the provisions of the Zurich

23  American SIR endorsement before this Court unambiguously manifests the intent of Zurich

24  American and Crown to control their relationship such that Crown assumed all costs and liability

25  for the first $500,000 of any claim that might be made under the Zurich American Policies,

26  regardless of whether that claim was against Crown or an additional insured.

27

28

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

Selman Breitman LLP
ATTORNEYS AT LAW

(2)    **Crown's Only Reasonable Expectation Is That the Zurich American SIR Endorsement Applies to Additional Insureds.**

A court may look to the parties' reasonable expectations to reinforce its conclusion regarding the meaning of language it found to be unambiguous.  *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377, 404 (2005).

Before Zurich American offered to sell a general liability policy to Crown that included a self-insured retention, Crown already knew that such retention would cause some of its clients such concern that Crown requested a "matching" deductible policy.  In early 2013, Marsh (Crown's insurance broker) advised Zurich American: "We [Crown] are moving this program to a high retention requesting options of $250,000 and $500,000.  This will be the first year on a retention and as such we anticipate some certificate issues.  Thus, we are requesting a matching deductible policy with a limited named insured endorsement as shown in our specifications." (Tenero Decl., ¶3, Ex. 3.)  Crown also disclosed that in the prior year, it (and, necessarily, its additional insured clients) were insured under a primary policy with a $10,000 deductible.

These disclosures are significant.  As the *Forecast Homes* Court stated: "A deductible relates only to the 'damages for which the insured is indemnified, not to defense costs. The insurer is fully responsible for defense costs regardless of the amount of the deductible so long as there is a potential for coverage under the policy.'"  *Forecast Homes, Inc.*, 181 Cal.App.4th at 1474.  Therefore, during 2012 (and likely before), Crown and its clients (as additional insureds) received a first-dollar defense from Crown's 2012 general liability insurer.  In switching to a "high retention," Crown anticipated "certificate issues."  As provided above, Crown contractually agreed to procure insurance and to add its clients (and their property managers) as additional insureds on such insurance.  These same contracts required Crown to verify compliance with these insurance requirements by producing a certificate of insurance.  For example, the ABM/The Irvine Company Master Operational Service Agreement provides:

/ / /

/ / /

Selman Breitman LLP
ATTORNEYS AT LAW

---

**EXHIBIT B TO MASTER SERVICES CONTRACT**

**INSURANCE REQUIREMENTS**

**A.** **General**

   **1.**    As to each executed Service Contract, before the performance of any portion of the Services under such Services Contract, Contractor must obtain and provide evidence of the types and levels of insurance specified below with insurance carriers acceptable to Owner.

   **2.**    As evidence of insurance coverage, Contractor shall deliver (a) certificates of insurance issued by Contractor's insurance carrier showing such policies in force for the periods required under these Insurance Requirements [...]

(Tenero Decl., ¶28, Ex. 28 at NERI 01814.)

---

"Subcontractors [like Crown] are often required contractually to name the project [or building] owner [...] as additional insureds under their CGL policies. Compliance is confirmed by issuing policy endorsements to the additional insured parties. They [building owners] often do not receive the actual endorsement, but rather are notified by way of a certificate of insurance." *Pardee Const. Co. v. Insurance Co. of the West*, 77 Cal.App.4th 1340, 1347 (2000), as modified on denial of reh'g (Feb. 23, 2000).

Crown anticipated "certificate issues" because such certificates disclosed to Crown's clients that instead of being covered under a primary general liability policy with a $10,000 deductible and, therefore, afforded first-dollar defense and indemnity to them, they would now be "covered" first by Crown under its $500,000 self-insurance and then by Zurich American. As the *Forecast Homes* Court stated: "The term 'retention' (or 'retained limit') refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied before there is any coverage under the policy. [...] Unlike a deductible, which generally relates only to damages, an SIR also applies to defense costs and settlement of any claim." *Forecast Homes, Inc.*, 181 Cal.App.4th at 1474. This issue came to a fever pitch when Shorenstein, "a very important client to Able," voiced concerns. (Tenero Decl., ¶16, Ex. 16 at MARSH-CES-003901.) While Crown convinced Shorenstein to accept a "high SIR," according to Marsh,

31

465 46596 4839-4925-7680 v7

"Shorenstein is [was] more concerned with Able providing them a defense vs being an AI [additional insured] via the CG 20 26 on a high $500k SIR CGL policy[.]"  (Tenero Decl., ¶16, Ex. 16 at MARSH-CES-003901 and MARSH-CES-003899.)  It appears the issue was ultimately resolved but not by Zurich American.  Shorenstein (and/or Crown) asked Zurich American to modify its Self Insured Retention endorsement to accommodate Shorenstein.  (Tenero Decl., ¶16, Ex. 16 at MARSH-CES-003901.)  Zurich American refused the request stating:

> I spoke with one of our underwriting experts about Shorenstein's request that we amend the SIR endorsement to affirm coverage of defense of their claims within Able's SIR.  Please note, though, that the attachment to your email was not that request but rather was a proposed agreement between Shorenstein and Able.
>
> Which leads to our response: Zurich's coverage attaches over Abel's SIR and it isn't appropriate for us to guarantee what Able does within its SIR limits.  As you know, in Self Insured Retention situations, the excess carrier does not 'drop down' to pay either loss or expense (such as defense expense) within the Self Insured Retention.  It seems, therefore, that the appropriate place for this matter to be addressed is via an agreement between the 'primary insurer' (in the case of Able's GL program, Able itself) and Shorenstein.
>
> (Tenero Decl., ¶18, Ex. 18 at ZUR-00 UW04761.)

Prior to this communication, Zurich American had already advised Marsh (who in turn advised its client, Crown) that:  "Becoming an additional insured on the policy grants them defense, first by Able within the SIR and subsequently by Zurich once the claim exceeds $500,000."  (Tenero Decl., ¶16, Ex. 16 at MARSH-CES-003898.)  Crown communicated this statement verbatim to Shorenstein.  (Tenero Decl., ¶17, Ex. 17 at MARSH-CES-003963 – MARSH-CES-003964.)  Zurich American's communication was not new.  In her cover email enclosing Zurich American's revised quote, Gail Sydow, Vice President and Casualty Executive Underwriter, Global Corporate Casualty, Zurich American Insurance Company, made plain to John Rolph, Vice President, Marsh Risk & Insurance Services – Crown's insurance broker -  that "in respect to the GL coverage **including the endorsements** the Zurich's coverage **attaches on top of Able's SIR** which should give some comfort to the umbrella carrier."  (Tenero Decl., ¶6, Ex. 6 at MARSH-CES-0028942 (bolding added).)  Crown's concurrent request that Zurich American provide a "matching" deductible policy belies Crown's feigned ignorance that the self-

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

insured retention applies to additional insureds.  The deductible policy was Crown's fallback strategy in case a client demanded first-dollar defense and indemnity from an insurer, not Crown.

No court has found Zurich American's Self Insured Retention endorsement ambiguous. "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."  *State of California v. Continental Ins. Co.*, 55 Cal.4th 186, 195 (2012).  It has one plain meaning – the retention is a condition precedent to coverage for any insured, including, additional insureds, and absent satisfaction of the retention by Crown through payment of defense fees, costs or indemnity totaling the self-insured retention amount, Zurich American does not owe any insured any obligations – defense or indemnity.

### (3)   Zurich American is not Liable for Losses Resulting From Crown's Own Negligence in Ordering its Insurance Coverages.

From the very first paragraph of its moving papers, Crown weaves a false narrative that Zurich American "promised to provide such [a comprehensive insurance] program.  (Crown's Moving Papers, p. 1:06 – 09.)  What Zurich American promised to provide Crown was what Crown, through its own insurance broker, Marsh, requested – commercial general liability insurance excess to $500,000 self-insurance to be provided by Crown.  As provided above, the underwriting negotiations and claims handling testify to this understanding.   It was Crown who requested and ultimately authorized a sea change in how it insured itself, as means to manage its own risks and to stop "trading dollars" with insurers.  In this process, Zurich American did not owe Crown a fiduciary duty to "(1) make available to them a particular kind of insurance, (2) advise them of the availability of such coverage elsewhere in the industry, or (3) advise them of inadequacies in coverage of which plaintiffs should, as reasonable persons, have themselves been aware.  *Gibson v. Government Employees Ins. Co.* 162 Cal.App.3d 441, 452 (1984).  If Crown has recourse in this regard, it is against Marsh.

/ / /

/ / /

/ / /

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

<div align="left" style="writing-mode: vertical-rl;">

**Selman Breitman** LLP
ATTORNEYS AT LAW

</div>

(4) <u>Until the Retention is Exhausted, Zurich American Does Not Owe Crown or Any Insured a Coverage Decision.</u>

At page 2, Crown argues: "Zurich's inconsistent and inadequate approach to Able's claims are, in effect, a failure to investigate and reach a coverage decision quickly. This is a clear and intentional violation of Zurich's obligations under the policy and has caused Able to pay amounts in excess of that required under the terms of the policy." (Crown's Moving Papers, p. 2:03 – 06.) This is either a fundamental misunderstanding of insurance law (for which Crown can try and blame its broker, Marsh) or subterfuge.

As the *Forecast Homes* Court stated: "It is well recognized that self-insurance retentions are the equivalent to primary liability insurance, and that policies which are subject to self-insured retentions are 'excess policies' which have no duty to [defend or] indemnify until the self-insured retention is exhausted." *Forecast Homes*, Inc., 181 Cal.App.4th at 1474. In addition, the Zurich American Self Insured Retention endorsement provides: "If **Option 1** is selected, it is a *condition precedent* to our liability that you make actual payment of 'self insured retention' and 'defense costs' for each 'incident', until you have paid 'self insured retention' and 'defense costs' equal to **the Per Incident – You Pay Defense Costs Within SIR** amount[.]" (Tenero Decl., ¶6, Ex. 6 at MARSH-CES-002939 (italics added).) Either under general insurance principles or the specific condition precedent language, Zurich American did not owe Crown or any insured a coverage decision prior to the retention being satisfied. Crown, not Zurich American, owed its clients and property managers the primary obligation to defend and indemnify them within the $500,000 self insured retention either as a contractual indemnitee or as a guarantor for the insurance risks Crown assumed. Crown's gripe is not truly that Zurich American allegedly delayed or failed to respond to additional insured tenders (as Zurich American owed no duty to do so). Crown's gripe is that Zurich American refused to provide any additional insured a first-dollar defense or indemnity because Crown had not satisfied the self insured retention amount. (Moving Papers, pp 7:24 – 8:13, p. 8:23 – 9:03, and 9:23 ("sole pretext for nonpayment").) As provided above, Zurich American owed no duty to do so.

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

465 46596 4839-4925-7680 v7

1    Again, Crown's stated authority – such as, *Pardee Construction* and *Borg* – Compares

2 apples to oranges, as neither of those Courts examined a policy that contained, as a condition

3 precedent to coverage, a self-insured retention. (Moving Papers, p. 14:11 – 28.)  Because Zurich

4 American's duty to defend *never* arose in any of the underlying fifty-five actions (since Crown

5 never satisfied its $500,000 self-insured retention), cases discussing that the duty to defend is "a

6 continuing one" and the ramifications to an insurer when such duty is breached are meaningless

7 in the context of this action.  (Moving Papers, p. 15:01 – 22.)

8          (5)    **Crown's Interpretation is Strained, Absurd and Derived by**

9                 **Overstating or Misapplying its Authorities' Holdings.**

10    Crown maintains that "based on clear policy language", Zurich American's self insured

11 retention "does not apply to additional insureds." (Crown's Moving Papers, p. 1:23 – 24.)  As

12 provided above, this assertion defies logic and is contrary to the policy negotiations, the plain

13 language of the SIR endorsement, California's statutory rules governing policy interpretation,

14 the seminal decision, *Forecast Homes*, in which the California Court of Appeal, Fourth District,

15 held that a substantially identical endorsement obligated the named insured to satisfy the

16 retention before the insurer owed any obligation to an additional insured and the *Walsh*

17 *Construction Company* decision which decision provides compelling and persuasive reasoning.

18    <u>First</u>, Crown argues that "even a cursory reading of the endorsement reveals that [the]

19 endorsement is directed at 'you' rather than an 'insured'."  (Moving Papers, p. 5:03-21.)  By

20 tethering this statement to the policies' separate of insureds provision, (Moving Papers, p. 4:07-

21 13), Crown concludes, *ipso facto*, that the endorsement applies only to it and no one else.  If

22 accepted, this argument turns the most fundamental insurance principle on its head; that the

23 named insured must pay the policy premium *before* policy benefits are afforded any insured.

24 The 2013 SIR Policy and 2014 SIR Policy each provide:  "The first Named Insured shown in the

25 Declarations: 1. Is responsible for the payment of all premiums […]." (Tenero Decl., ¶11, Ex. 11

26 at ZUR000013 and ¶12, Ex. 12 at ZUR000164.)  These policies further provide:  "In return for

27 the payment of premium, and subject to the terms of this policy, coverage is provided as stated in

28

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

465 46596 4839-4925-7680 v7

Selman Breitman LLP
ATTORNEYS AT LAW

1    this policy.  (Tenero Decl., ¶11, Ex. 11 at ZUR000002 and ¶12, Ex. 12 at ZUR000155.)  Under

2    Crown's worldview, an additional insured would be entitled to policy benefits, including,

3    defense and indemnity, even when the Named Insured failed to pay the premium.

4            Second, "courts will not adopt a strained or absurd interpretation in order to create an

5    ambiguity where none exists." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5

6    Cal.4th 854, 867 (1993).  Relying on *Montgomery Ward* and *Legacy Vulcan*, Crown argues that

7    an SIR does not alleviate Zurich American's obligation to provide additional insureds a first-

8    dollar defense.  *Montgomery Ward & Company, Inc. v. Imperial Cas. & Indem. Co.*, 81

9    Cal.App.4th 356, 373 (2000).  Crown is incorrect.  Neither *Montgomery Ward* nor *Legacy*

10   *Vulcan* stand for such an expansive principle.  Rather, each stands for the proposition that a

11   policy must be enforced according to its policy terms.  *Id.* at 368 ("The significant point is that

12   these cases [including, *General Star*], like all other insurance cases, look first to the terms of the

13   policy.")  The *Montgomery Ward* Court examined the words:  "With respect to any occurrence

14   not covered by the underlying policies listed in Schedule […], [the insurer] shall: (a) defend any

15   suit against the insured […].")  *Montgomery Ward* , 81 Cal.App.4th at 373–374.  Since the

16   retention was not "underlying insurance" and the policy did not include an SIR endorsement

17   stating the insurer has "the right but not the duty to assume charge of the defense," the Court

18   found the policy ambiguous and construed it against the insurer.  *Id.* at 375.  Based on

19   substantially similar (if not identical) language, the *Legacy Vulcan* Court arrived at the same

20   conclusion. *Legacy Vulcan Corp. v. Superior Court*, 185 Cal.App.4th 677, 697 (2010).

21           However, while the *Montgomery Ward* Court concluded a defense was owed based on

22   the language before it, it affirmed its prior holing in *General* Star.  "In *General Star*, the court

23   merely enforced the SIR in the insured's policy, saying the 'policy must be enforced according to

24   its plain terms' [citation omitted], which included an SIR of $100,000 and provided the insurer

25   had 'the right but not the duty to assume charge of the defense' [citation omitted].  This court

26   accordingly held the insurer was 'in the position of an excess carrier having no obligations until

27   the SIR was exhausted' [citation omitted], with no obligation to defend." *Montgomery Ward* , 81

28

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

465 46596 4839-4925-7680 v7

Selman Breitman LLP
ATTORNEYS AT LAW

1   Cal.App.4th at 368 (quoting *General Star Indemnity Co. v. Superior Court*, 47 Cal.App.4th

2   1586, 1594 (1996).)  Significant to the *General* Star Court was that the policy contained an SIR

3   endorsement which stated "[i]n the event of conflict with any provisions elsewhere in the

4   policy," the SIR endorsement controls and that "the duty to defend (contained in the standard CL

5   100 forms) is 'reinstated' only in the event that the 'aggregate Retained Limit' is exhausted."

6   *General Star Indemnity Co.*, 47 Cal.App.4th at 1590.   Likewise, this District previously

7   acknowledged:  "If a policy plainly and clearly states that the insurer's duty to defend is

8   conditioned on the exhaustion of an SIR, the duty will not arise at tender, but rather when such

9   exhaustion occurs."  *Evanston Ins. Co. v. American Safety Indem. Co.*, 768 F.Supp.2d 1004,

10   1013 (N.D. Cal. 2011).

11         Here, unlike the policy language examined in *Montgomery Ward* and *Legacy Vulcan*, the

12   Zurich American Policies contain an SIR endorsement which expressly states its terms control

13   "in the event of conflict with any other provision elsewhere in the policy," and that Zurich

14   American "shall have no obligations under this policy unless you have satisfied your 'self

15   insured retention' obligation."  (Tenero Decl., ¶11, Ex. 11 at ZUR000058, ZUR000059 and

16   ZUR0000063; Tenero Decl., ¶12, Ex. 12 at ZUR000206, ZUR000207 and ZUR000211.)

17         Crown's stated authority are mere distraction as they do not contain the same policy

18   language before this Court.  A contract must be interpreted according to its own terms.  Other

19   courts have considered the Zurich American SIR endorsement and the unanimous conclusion is

20   that the plain language of that endorsement requires the named insured to satisfy the self-insured

21   retention amount before any obligation – defense or indemnity – is owed any insured.

22         **B.    With Respect to the Fifth Cause of Action, Zurich American is Entitled to
              Summary Judgment on the GL Policies.  Absent a Breach of the Insurance
23            Policies, Crown Cannot Maintain a Bad Faith Claim as a Matter of Law.**

24         As a matter of law, a bad faith claim cannot be maintained unless policy benefits are due.

25   *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 36 (1995), as modified on denial of reh'g (Oct.

26   26, 1995 (stating "[i]t is clear that if there is no potential for coverage and, hence, no duty to

27   defend under the terms of the policy, there can be no action for breach of the implied covenant of

28

Selman Breitman LLP
ATTORNEYS AT LAW

37

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

465 46596 4839-4925-7680 v7

1   good faith and fair dealing because the covenant is based on the contractual relationship between

2   the insured and the insurer."; *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1153 (1990).

3       For the reasons stated above, Zurich American did not breach the 2013 SIR Policy or the

4   2014 SIR Policy and no policy benefits are due Plaintiffs.   Therefore, with respect to the GL

5   Issue, Plaintiffs cannot maintain a bad faith claim against Zurich American and Zurich American

6   is entitled to summary judgment on the GL Issue and/or partial summary judgment with respect

7   to the fifth cause of action.

8       **C.**      **With Respect to its Counterclaim for Declaratory Relief, Zurich American is**
        **Entitled to Summary Judgment as a Matter of law.**
9

10      In this action, Zurich American filed a counterclaim against Plaintiffs seeking a judicial

11  declaration that with respect to the fifty-five underlying actions, Zurich American did not owe

12  Plaintiffs nor their clients – the property owners and property manager – defense or indemnity.

13  (RFJN, ¶6, Ex.72 at pp. 19 - 25.)   For all of the reasons stated above, Zurich American

14  respectfully requests that it is entitled to summary judgment on its counterclaim for declaratory

15  relief, as a matter of law.

16  / / /

17  / / /

18  / / /

19

20

21

22

23

24

25

26

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

465 46596 4839-4925-7680 v7

1  **VII.   CONCLUSION**

2          For the above-stated reasons and stated authority, Crown has not and cannot meet its

3  burden of proof on this summary judgment motion.  Zurich American's Self Insured Retention

4  endorsement is unambiguous, applies to any insured, including, additional insureds, and is a

5  condition precedent to Zurich American owing defense or indemnity.  It remains undisputed that

6  in defending and settling the fifty-five underlying actions on behalf of itself and/or additional

7  insureds, Crown never incurred or paid $500,000 or more; its self-insured retention amount per

8  underlying action.  Crown does not dispute that these cross-motions are intended to resolve the

9  "[SIR] issue common to all of the challenged claims concerning the CGL program." (Crown's

10  Moving Papers, p. 1:18 – 19.)  Therefore, Zurich American never owed Crown or any additional

11  insured defense or indemnity in any of those.  As such, Zurich American, not Crown, is entitled

12  to summary judgment on the GL Issue (and, specifically, with respect to the first and fifth causes

13  of action).  Respectfully submitted.

14

15  DATED: November 2, 2020

                                              SELMAN BREITMAN LLP

16

17

18                                            By: _____
                                                  JAMES R. TENERO
19                                                SHERYL W. LEICHENGER
                                                  Attorneys for Defendant/Counterclaimant
20                                                Zurich American Insurance Company

21

22

23

24

25

26

27

28

ZURICH AMERICAN'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE GL ISSUE; OPPOSITION - Case No. 3:19-cv-06334-EMCX

465 46596 4839-4925-7680 v7