JAMES R. TENERO (SBN 201023)
SELMAN BREITMAN LLP
33 New Montgomery, Sixth Floor
San Francisco, CA 94105-4537
Telephone    :    415.979.0400
Facsimile    :    415.979.2099
Emails       :    jtenero@selmanlaw.com

SHERYL W. LEICHENGER (SBN 161688)
SELMAN BREITMAN LLP
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025-6538
Telephone    :    310.445.0822
Facsimile    :    310.473.2525
Email        :    sleichenger@selmanlaw.com

Attorneys for Defendant/Counterclaimant
Zurich American Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA-SAN FRANCISCO DIVISION

| | |
|---|---|
| CROWN ENERGY SERVICES, INC. d/b/a ABLE ENGINEERING SERVICES and CROWN BUILDING MAINTENANCE CO. d/b/a ABLE BUILDING MAINTENANCE, <br><br> Plaintiffs, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, ZURICH SERVICES CORPORATION and DOES 1-50, inclusive, <br><br> Defendants. <br><br> And Related Counterclaims. | Case No. 3:19-cv-06334-EMC <br><br> DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT, ON THE GL ISSUE <br><br> Date  :  12/10/2020 <br> Time  :  1:30 p.m. <br> Ctrm. :  5 (Via Zoom) <br> Judge :  Hon. Edward M. Chen |

ZURICH AMERICAN'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT ON THE GL ISSUE - Case No. 3:19-cv-06334-EMC

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. LEGAL ARGUMENT .........................................................................................4

    A. The "Trump" Argument .............................................................................4

    B. Policy Negotiations are Relevant and Admissible as They Confirm the Self-Insured Retention Endorsement's Plain Meaning and Crown's Reasonable Expectation of Coverage .........................6

    C. The *Forecast Homes* and *Walsh Construction* Decisions are on Point and Support Summary Judgment in Favor of Zurich American ..................................................................................................9

    D. Regarding Crown's Bad Faith Claim, Zurich American is Entitled to Partial Summary Judgment on the GL Issue ..........................................11

III. CONCLUSION ...................................................................................................11

i

ZURICH AMERICAN'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT ON THE GL ISSUE – Case No. 3:19-cv-06334-EMC

# TABLE OF AUTHORITIES

**Federal Cases**

*Trishan Air, Inc. v. Federal Ins. Co.*
　635 F.3d 422 (9th Cir. 2011) .................................................................................................. 2

**California Cases**

*AIU Ins. Co. v. Superior Court*
　51 Cal.3d 807 (1990) .............................................................................................................. 6

*Atlas Assurance Co. v. McCombs Corp.*
　146 Cal.App.3d 135 (1983) .................................................................................................... 7

*Bank of the West v. Superior Court*
　2 Cal.4th 1254 (1992) ..................................................................................................... 6, 7, 8

*Forecast Homes, Inc. v. Steadfast Ins. Co.*
　181 Cal.App.4th 1466 (2010) ...................................................................................... 2, 8, 9, 10

*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944 957 (2003) ............................................................. 10

*Frontier Oil Corp. v. RLI Ins. Co.*
　153 Cal.App.4th 1436 (2007) ................................................................................................. 4

*Haynes v. Farmers Ins. Exchange*
　32 Cal.4th 1198 (2004) ........................................................................................................... 4

*North American Capacity Ins. Co. v. Claremont Liability Ins. Co.*
　177 Cal.App.4th 272 (2009) ................................................................................................ 2, 5

*Powerine Oil Co., Inc. v. Superior Court*
　37 Cal.4th 377 (2005) ......................................................................................................... 6, 7

*Rossmoor Sanitation, Inc. v. Pylon, Inc.*
　13 Cal.3d 622 (1975) ............................................................................................................ 10

*United Farmers Agents Assn., Inc. v. Farmers Group, Inc.*
　32 Cal.App.5th 478 (2019) ................................................................................................... 10

ii

ZURICH AMERICAN'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT ON THE GL ISSUE – Case No. 3:19-cv-06334-EMC

465 46596 4812-1418-6198.v1

*Vandenberg v. Superior Court*
  21 Cal.4th 815 (1999) ...................................................................................................... 10

*Waller v. Truck Ins. Exchange, Inc.*
  11 Cal.4th 1 (1995) .......................................................................................................... 7

**Other State Cases**

*Walsh Construction Company v. Zurich American Insurance Company*
  72 N.E.3d 957 (Ind. Ct. App. 2017) ........................................................................ *passim*

**California Statutes**

Cal. Civ. Code, §1636 .......................................................................................................... 6

Cal. Civ. Code, §1641 ........................................................................................................ 10

Cal. Civ. Code, §2772 ........................................................................................................ 10

iii

ZURICH AMERICAN'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT ON THE GL ISSUE – Case No. 3:19-cv-06334-EMC

465 46596 4812-1418-6199.v1

## I. INTRODUCTION

It is telling what Crown does not (and cannot) dispute.

<u>Crown does not dispute:</u>

(1) Crown provides its clients (principally, owners of commercial buildings, including, shopping malls), janitorial and building maintenance services, such as, mopping floors and snow removal, and/or building engineering services, such as, HVAC repair.[1]

(2) In its contracts, Crown agrees to defend and indemnity its clients (and, typically, their property managers) against third-party claims arising from or relating to Crown's janitorial and building engineering services. For example, the claim by Ms. Silvia Neri who sued building owner, the Irvine Company, based on it alleged negligent maintenance of the property when she slipped and fell on a wet lobby floor.[2]

(3) Prior to 2013, Crown honored its contractual obligations to defend and indemnify its clients and their property managers by adding them as additional insureds onto Crown's primary general liability insurance policy with a $10,000 deductible.[3]

(4) In 2013, Crown made a sea change in how it insured the above-mentioned risks. It retained Marsh Risk as its insurance agent and asked insurers, including, Zurich American, to provide coverage excess to a $500,000 self-insured retention.[4]

A self-insured retention is fundamentally different from a deductible. While the named

---

[1] Defendant Zurich American Insurance Company's Notice of Cross-Motion And Cross-Motion; Memorandum of Points & Authorities in Support of Zurich American's Cross-Motion For Summary Judgment, or Alternatively, Partial Summary Judgment, on the GL Issue and in Opposition to Plaintiffs' Motion For Partial Summary Judgment on the GL Issue ("Zurich American's Moving Papers"), at p. 11:13 - 17-21; Zurich American Insurance Company's Request For Judicial Notice in Support of Cross-Motion for Summary Judgement, or Alternatively, Partial Summary Judgment, on the GL Issue and in Opposition to Plaintiffs' Motion for Partial Summary Judgment on the GL Issue ("RFJN"), ¶5, Ex. 71 at ¶¶ 8 – 9.)

[2] Plaintiffs' Motion for Partial Summary Judgment Against Zurich American Insurance Company ("Crown's Moving Papers"), p. 1:03-06; Zurich American's Moving Papers, pp. 11:13 – 19, 12:09 – 14, 13:14 – 20, 14:17 – 23, 15:15 – 23 and 16:22 – 17:03.)

[3] Zurich American's Moving Papers, p. 4:02 – 06.

[4] Zurich American's Moving Papers, p. 4:02 – 14.

1

ZURICH AMERICAN'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT ON THE GL ISSUE – Case No. 3:19-cv-06334-EMC

insured is responsible for paying the deductible at the end of the day, the insurer retains the primary and exclusive responsibility for defending insureds against potentially covered claims. *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal.App.4th 1466, 1474 (2010)  In contrast, a self-insured retention transfers to the named insured, responsibility for defending and indemnifying itself and other insureds within a set-sum designated as the self-insured retention amount. *Id.* at 1474. In effect, "self-insurance retentions are the equivalent to primary liability insurance, and [ ] policies which are subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted." *Ibid.*

    (5)    The subject Zurich American Policies, i.e., the 2013 SIR Policy and the 2014 SIR Policy, are subject to a $500,000 self-insured retention.[5]

    (6)    In selecting self-insured retention Option 1, Crown agreed that as a "condition precedent to our [Zurich American's] liability" under the policies, Crown must make actual payment of "self insured retention" and "defense costs" for each "incident" equal to the $500,000 self-insured retention amount.[6]

Under California law, a condition precedent "refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties....' [they] impose certain duties on the insured in order to obtain the coverage provided by the policy.' [Citation.]," *North American Capacity Ins. Co. v. Claremont Liability Ins. Co.*, 177 Cal.App.4th 272, 289–290 (2009), and require strict compliance. *Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422, 428 (9th Cir. 2011).

    (7)    In selecting self-insured retention Option 1, Crown agreed that "we [Zurich American] *shall* have *no obligation* to pay 'self insured retention' and 'defense costs' under this policy," "if any final judgment or settlement and 'defense costs' are less than such Self Insured Retention Amount(s) [$500,000]."[7]

---

[5] Zurich American's Moving Papers, p. 8:08 – 10.
[6] Zurich American's Moving Papers, p. 6:01 – 17.
[7] Zurich American's Moving Papers, p. 6:01 – 17.

2
ZURICH AMERICAN'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT ON THE GL ISSUE – Case No. 3:19-cv-06334-EMC

8) Under Section I, Crown agreed that "payments by others, *including but not limited to additional insureds or insurers*, do not serve to satisfy your [Crown's] 'self insured retention' obligations or your [Crown's] obligations for payment of 'defense costs'," and Under Section II that "in the event of your [Crown's] refusal to respond to your obligation for payment of 'self insured retention' or 'defense costs' for any reason, we [Zurich American] *shall not make payments for you, nor in any event shall we be required to substitute for you as respects your responsibility for payment of these 'self insured retention' or 'defense costs'*." (italics added.)[8]

(9) The self-insured endorsement defines "defense costs" as including, "costs for all attorneys […] and any other fees, costs or expenses reasonably chargeable to […] settlement or defense of *a claim* or *a loss under the policy*." (italics added.)[9]

(10) In this action, Crown maintains that the fifty-five underlying actions involve settlement or defense of a claim or a loss under the Zurich American Policies;[10] and

(11) In none of the fifty-five underlying actions did Crown make actual payment of $500,000 defending itself and its clients (as contractually obligated to do) against those actions or in settling those actions on behalf of itself and its clients.[11]

To avoid the consequences of these undisputed facts, the plain language of the self-insured retention endorsement and California law, Crown encourages this Court to read provisions in isolation (contrary to statutory mandate and case law), and to disregard precedent that examined substantially similar (if not identical) language and concluded that an insurer does not owe any insured, including an additional insured, defense or indemnity until the self-insured retention is satisfied. As the *Walsh Construction* Court stated: "there is no rational basis to apply the SIR endorsement as a condition precedent to Zurich's coverage of the named insured but not to Zurich's coverage of additional insureds." *Walsh Construction Company v. Zurich American Insurance*

---

[8] Zurich American's Moving Papers, p. 6:19 – 7:02.
[9] Zurich American's Moving Papers, p. 7:17 - 26.
[10] RFJN, ¶5, Ex. 71 at ¶¶ 18, 68.
[11] RFJN, ¶5, Ex. 71 at ¶18.

*Company*, 72 N.E.3d 957, 964 (Ind. Ct. App. 2017). Respectfully, Zurich American is entitled to summary judgment.

## II. LEGAL ARGUMENT

### A. The "Trump" Argument.

In its combined opposition/reply brief, Crown attempts to divorce the self-insured retention endorsement from the Zurich American Policies to establish Zurich American owes additional insureds first-dollar defense and indemnity. Contrary to Crown's position, black-letter law supports Zurich American's position. "An endorsement modifies the basic insuring forms of the policy and is an integral part of the policy. [citation.] Standing alone, an endorsement means nothing. 'Endorsements on an insurance policy form a part of the insurance contract [citation], and the policy of insurance with the endorsements and riders thereon must be construed together as a whole [citation].' " *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436, 1463 (2007). "Coverage may be limited by a valid endorsement and, if a conflict exists between the main body of the policy and an endorsement, the endorsement prevails." *Haynes v. Farmers Ins. Exchange*, 32 Cal.4th 1198, 1204 (2004). Thus, even though the self-insured retention endorsement itself explicitly states it controls, California law independently mandates this approach.

Turing to the endorsement itself, from the start the endorsement states: "This endorsement modifies insurance provided under the: Commercial General Liability Coverage Part". It is under this same coverage part – the commercial general liability coverage – that Crown argues Zurich American owes additional insureds first-dollar defense and indemnity. Since this endorsement modifies that coverage part, the terms of this endorsement must be examined. (for such analysis, please see Zurich American's Memorandum of Points & Authorities in Support of its Cross-Motion for Summary Judgment, or Alternatively, Partial Summary Judgment, on the GL Issue and in Opposition to Plaintiffs' Motion for Partial Summary Judgment on the GL Issue ("Zurich American's Moving Papers"), pp. 20 – 30.)

In addition, following the schedule which identifies the self-insured retention amount as $500,000, the endorsement states: "The insurance provided by this policy is subject to the

4

following additional provisions, which in the event of conflict with any other provisions elsewhere in the policy, shall control the application of the insurance to which this endorsement applies: [...]." Crown does not argue that this provision is ambiguous; rather, Crown argues that there is no conflict. This argument is baseless for two reasons:

<u>First</u>, there is a patent and material conflict. If the terms of this endorsement do not apply to additional insureds then Zurich American owes them first-dollar defense and indemnity. Under the terms of the commercial general liability coverage part, Zurich American agrees to "pay those sums that the insured becomes legally obligated to pay as damages [...] to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking [such damages]." (Declaration of James R. Tenero in Support of Zurich American's Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment on the GL Issue ("Tenero Decl."), ¶11, Ex. 11 at ZUR000037; ¶12, Ex. 12 at ZUR000185.) In contrast, the terms of the endorsement provide: "If Option 1 is selected, *it is a condition precedent to our* [Zurich American's] *liability* that you [Crown] make payment of 'self insured retention' and 'defense costs' for each 'incident' [...]," "[i]f any final judgment or settlement and 'defense costs' are less than such Self Insured Retention Amount(s), *we shall have no obligation to pay 'self insured retention' or 'defense costs' under this policy,*" and "payment by others, including but not limited to additional insureds or insurers, do not serve to satisfy your 'self insured retention' obligations or your obligation for payment of 'defense costs'." (Tenero Decl., ¶11, Ex. 11 at ZUR000059; ¶12, Ex. 12 at ZUR000207.) These terms are the antithesis of owing any insured first-dollar defense or indemnity. There is a conflict.

<u>Second</u>, a conflict is not required. The initial clause of the subject provision states: "The insurance provided by this policy *is subject to* the following additional provisions [...]." (italics added.) "If an action or event is subject to something, it needs something to happen before it can take place." (https://dictionary.cambridge.org/us/dictionary/english/subject-to-something.) Before Zurich American is liable under the policy (e.g., for defense or indemnity), Crown must pay $500,000 in "self insured retention" and "defense fees". Absent actual payment, Zurich

5

1 American does not owe first-dollar defense or indemnity to any insured.

  **B. Policy Negotiations are Relevant and Admissible as They Confirm the Self-Insured Retention Endorsement's Plain Meaning and Crown's Reasonable Expectation of Coverage.**

  Contrary to Crown's assessment, Zurich American does not, as the aphorism goes, put the cart before the horse.

  First, the "fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992); Cal. Civ. Code, §1636 ("a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.") While "such intent is to be inferred, if possible, solely from the written provisions of the contract," *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990), the California Supreme Court has held that a court may look to the parties' reasonable expectations to reinforce its conclusion regarding the meaning of language it finds unambiguous. *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377, 404 (2005). Therefore, this Court may examine extrinsic evidence (including, policy negotiations and Crown's client contracts) to confirm that the self-insured retention endorsement is unambiguous and requires Crown, as a self-insurer up to $500,000, to defend and indemnify additional insureds.[12] Zurich American's obligation to defend and indemnify additional insureds attaches *after* the self-insured retention amount is paid.

  The policy negotiations history confirms that Zurich American's and Crown's mutual intention was for Crown to self-adjust its commercial general liability risks (i.e., claims and suits against itself, as well as, its contractual obligations to defend, indemnify and insure its clients at the primary, first-dollar level) up to its $500,000 self-insured retention. For a more complete analysis, please see Zurich American's Moving Papers, pages 20 – 30.

---

[12] Crown argues that extrinsic evidence is irrelevant. It is highly relevant. More so Crown did not object otherwise to the evidence Zurich American submitted in support of its cross-motion and in opposition to Crown's motion.

6
ZURICH AMERICAN'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT ON THE GL ISSUE – Case No. 3:19-cv-06334-EMC

Second, both Zurich American and Crown maintain that the self-insured retention endorsement is unambiguous albeit each drawing a different conclusion. However, "[d]isagreement concerning the meaning of a phrase,' ' "the fact that a word or phrase isolated from its context is susceptible of more than one meaning," does not make it ambiguous. *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377, 390–391 (2005). Furthermore, unambiguous policy language cannot be challenged because the insured misunderstood its meaning: "Under the objective test of contract formation, a 'meeting of the minds' is unnecessary. A party is bound, even if he misunderstood the terms of a contract and actually had a different, undisclosed intention." *Atlas Assurance Co. v. McCombs Corp.*, 146 Cal.App.3d 135, 144 (1983). Respectfully, when an insurer provides a prospective insured the proposed policy language in writing, explains how that language applies and the prospective insured fails to object to that language, purchases that policy and renews that policy, that insured cannot claim a different "reasonable" expectation of coverage than that which was explained to it. For this same reason and all of the reasons stated in Zurich American' Moving Papers, Crown's argument that the self-insured retention endorsement is not conspicuous, plain and clear is unsupported.

Regardless, interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995). Therefore, while "courts will not strain to create an ambiguity where none exists", *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 –19 (1995), should this Court conclude that the self-insured retention endorsement is ambiguous, it "must first attempt to determine whether coverage is consistent with the insured's [Crown's] objectively reasonable expectations. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265 (1992).[13] "In so doing, the court must interpret the language in context, with regard to its intended function in the policy. [citation omitted.] This is because 'language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found

---

[13] "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995).

to be ambiguous in the abstract.'" *Bank of the West*, 2 Cal.4th at 1265. Crown's opposition is dedicated to divorcing the self-insured retention endorsement from the Zurich American Policies and isolating the endorsement's provisions. (Crown's Opposition, pp. 1 - 5 (isolating "textual" arguments in attempt to minimize significance).) Crown must take this approach in order to create some semblance of an ambiguity where none exists. This process violates California law. As provided above, the language in a contract must be construed in the context of that instrument as a whole. For that reason, while not conclusive, the endorsement's title, modification/condition precedent provisions, Crown's obligations provisions, the payment by others provisions, and Zurich's obligations provisions among others, are all relevant and must be examined together. For a more complete analysis, please see Zurich American's Moving Papers, pages 25 – 30.

Moreover, California law is clear; the function of a self-insured retention is to transfer responsibility for defending and indemnify claims at the first-dollar level to the named insured: "The term 'retention' (or 'retained limit') refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied before there is any coverage under the policy. It is often referred to as a 'self-insured retention' or 'SIR.' " *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal.App.4th 1466, 1474 (2010). "[P]olicies which are subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted." *Forecast Homes, Inc.*, 181 Cal.App.4th at 1474. While the primary/excess analogy has limitations as a conceptual construct (e.g., when determining horizontal exhaustion), the analogy stands with respect to defense and indemnity of additional insureds. *Id.* at 1474 ("Defense obligations of excess insurers arise only when primary insurance coverage is exhausted"); *Walsh Construction Company v. Zurich American Insurance Company*, 72 N.E.3d 957 (Ind. Ct. App. 2017).

Construing Zurich American's self-insured retention endorsement in the context of the policies as a whole, and in the circumstances of the underlying cases, the conclusion that Zurich American does not owe additional insureds defense or indemnity until Crown satisfies the self-insured retention is consistent with Crown's objectively reasonable expectations.

### C. The *Forecast Homes* and *Walsh Construction* Decisions are on Point and Support Summary Judgment in Favor of Zurich American.

As provided in its Moving Papers, the *Forecast Homes* and *Walsh Construction* Courts both concluded that a substantially similar (if not identical) self-insured retention endorsement was unambiguous; it required the named insured to satisfy the self-insured retention amount *before* the insurer owed any insured, including, an additional insured, defense or indemnity. This conclusion was based on reading the provisions of the endorsement in context with each other and reason: "there is no rational basis to apply the SIR endorsement as a condition precedent to Zurich's coverage of the named insured but not to Zurich's coverage of additional insureds." *Walsh Construction Company v. Zurich American Insurance Company*, 72 N.E.3d 957, 964 (Ind. Ct. App. 2017). These decisions are on all-fours with the case at bar.

To avoid precedent, *Forecast Homes*, and persuasive authority, *Walsh Construction*, Crown again isolates one provision from the rest, divorces it from context, and concludes that based on the absence of three words – "or any insured" – Zurich American plainly owes additional insureds first-dollar defense and indemnity. However, the *Forecast Homes* and *Walsh Construction* holdings were supported by multiple footings, including, the supremacy clause (i.e., "this policy is subject to the following additional provisions, which in the event of conflict […] shall control […]"), that the endorsement operated as a condition precedent to coverage, that a self-insured retention is a risk-shifting mechanism, that a policy subject to such retention is an excess policy which lacks first-dollar defense and indemnity obligations, the Section I "Your Obligations" provisions, and in the *Forecast Homes* case, the payment by others provision.

In fact, the *Forecast Homes* Court did *not* rely on the definition of "retention" and its "or any insured" phrasing to conclude that the self-insured retention was a plain and unambiguous limitation on Steadfast's defense obligation to additional insured, Forecast Homes. *Forecast Homes, Inc.*, 181 Cal.App.4th at 1476. Rather, the *Forecast Homes* Court addressed this phrase in response to Forecast Homes' argument that it muddied the waters; that is, the "or any insured" phrase created an ambiguity in the otherwise plain language of the endorsement. *Id.* at 1476.

9

ZURICH AMERICAN'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT ON THE GL ISSUE – Case No. 3:19-cv-06334-EMC

Ultimately, the Court rejected this argument. However, Crown now criticizes Zurich American for not including this phrase which (1) the *Forecast* Homes holding is not based on, and (2) was used by Forecast Homes, an insured, to create ambiguity that did not otherwise exist.

Moreover, to adopt Crown's position – that absence of the phrase "or any insured" in the "self insured retention" definition means the retention does not apply to additional insureds – would render the "Payment By Others" provision superfluous. "We strive to 'give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable.' " *United Farmers Agents Assn., Inc. v. Farmers Group, Inc.*, 32 Cal.App.5th 478, 495 (2019); *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944 957 (2003) ("an interpretation rendering contract language nugatory or inoperative is disfavored"); Civ. Code, §1641.

The term "self insured retention" is defined as: "The amount or amounts which you must pay for all covered damages which you shall become legally obligated to pay because of the coverages included in the policy to which this endorsement is attached, sustained by one or more persons or organizations." (Tenero Decl., ¶11, Ex. 11 at ZUR000065; ¶12, Ex. 12 at ZUR000213.) This definition properly accounts for Crown's contractual reality. In its contracts, Crown agreed to defend and indemnify its clients (i.e., property owners and their property managers) from liability arising from or relating to Crown's janitorial services. Our Supreme Court has characterized indemnity as "the obligation resting on one party to make good a loss or damage another party has incurred." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 628 (1975); Cal. Civ. Code, §2772 ("Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person.") "This obligation may be expressly provided for by contract." *Id.* at 628. In short, Crown legally obligates itself to indemnify its clients for covered claims. "A reasonable layperson would certainly understand 'legally obligated to pay' to refer to any obligation which is binding and enforceable under the law[.]" *Vandenberg v. Superior Court*, 21 Cal.4th 815, 840 (1999). Therefore, by defining "self insured retention" as Crown's legal obligations, the definition subsumes settlements or judgments

Crown pays on behalf its additional insured clients.

### D. Regarding Crown's Bad Faith Claim, Zurich American is Entitled to Partial Summary Judgment on the GL Issue.

Crown sued Zurich American and Zurich Services Corporation ("Zurich Services"). However, only Zurich American moved for summary judgment or, in the alternative, partial summary judgment on the GL Issue. That is because Zurich Services alleged liability is limited to its adjustment of claims under workers compensation insurance policies, not the subject general liability policies. (First Amended Complaint, ¶¶ 14, 81 – 86 (third cause of action) and 87 – 91 (fourth cause of action).) Pursuant to the Court's Order, this motion is limited to the general liability (or "GL") issues. As provided above and in its Moving Papers, Zurich American did not breach the general liability policies. As such, Crown cannot maintain a bad faith cause of action against Zurich American based on the general liability policies. Therefore, Zurich American respectfully submits that it is entitled, at a minimum, to partial summary judgment on Crown's sixth cause of action as was requested in its Moving Papers.

### III. CONCLUSION

For the above-stated reasons and those stated in Zurich American's Moving Papers, Zurich American respectfully submits that it is entitled to summary judgment on the GL Issue and partial summary judgment with respect to Crown's sixth cause of action for bad faith.

DATED: November 23, 2020         SELMAN BREITMAN LLP

By: /s/James R. Tenero
JAMES R. TENERO
Attorneys for Defendant/Counterclaimant
Zurich American Insurance Company

11