UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROWN ENERGY SERVICES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 19-cv-06334-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM**<br><br>Docket No. 79 |

## I. INTRODUCTION

Pending before the Court is Defendant and Counter-Claimant Zurich American Insurance Company's ("Zurich") motion for leave to amend its Answer and Counterclaim to include a cause of action for reimbursement of amounts that Zurich paid to settle a personal-injury action against Plaintiffs and Counter-Defendants Crown Energy Services, Inc., and Crown Building Maintenance Co. (collectively, "Able"). *See* Docket No. 79 ("Mot."). Pursuant to Civil Local Rule 7-1(b), the Court took the motion under submission without a hearing. For the reasons given below, Zurich's motion for leave to amend is **GRANTED**.

## II. BACKGROUND

This case concerns Zurich's financial responsibilities to Able under commercial general liability ("CGL") and workers' compensation insurance policies that Able maintained with Zurich. *See* Docket No. 76 ("Order") at 1-2. Able provides "building maintenance and janitorial services to clients" such as property owners and managers. *Id.* at 2. During the relevant period, Able "contracted with Zurich to buy [CGL] insurance and to ensure that such insurance covered [Able's] clients as additional insureds on a primary, first-dollar basis." *Id.* (internal quotations

omitted). The CGL policies each "contained a $500,000 per claim self-insured retention ["SIR"] endorsement," which, the Court previously held, obliged Able to pay the first $500,000 worth of defense costs and damages on behalf of itself and additional insureds "as a condition precedent to [Zurich] owing [Able] any defense or indemnity under the policies."[1] *See* Mot. at 3.

In the instant motion, Zurich asserts that it recently "determined that it was entitled to reimbursement of amounts paid to settle" a claim on behalf of Able. *Id.* at 4. The so-called "Blackwell Claim" involved a slip and fall accident in New Jersey," in which Monica Blackwell, the injured party, sued both the property owner, Piedmont Office Realty Trust Inc. ("Piedmont"), and Able for damages. *See* Docket No. 79-1 ("Branse Decl.") at 3, Docket No. 85 ("Opp'n") at 2. Able had contracted to provide Piedmont with maintenance services and Piedmont maintained additional-insured status under the CGL policies. Branse Decl. at 3. After Ms. Blackwell brought suit, "Piedmont tendered its defense and indemnification to Able," which "subsequently passed on [these responsibilities] to Zurich." Opp'n at 2. Zurich ultimately paid $190,000 on behalf of Able and/or Piedmont toward settlement of the Blackwell Claim. Mot. at 4.

Because the Court earlier concluded that the CGL policies' SIR endorsement requires Able to pay the first $500,000 in defense costs and damages for each claim against either itself or an additional insured, Zurich believes that it is entitled to repayment of the Blackwell Claim's settlement amount. *See id.* Zurich therefore seeks leave "to amend its Counterclaim . . . to assert a cause of action for reimbursement of $190,000 paid toward settlement" of the Blackwell Claim. *Id.*

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) gives a party the right to "amend its pleading once as a matter of course" within a limited timeframe. *See* Fed. R. Civ. P. 15(a)(1). Otherwise, "a

---

[1] "The parties filed Cross-Motions for Summary Judgment regarding their respective rights and obligations under" the CGL policies in Fall 2020. *See* Mot. at 3; *see also* Docket Nos. 59 and 67 (comprising the cross-motions). On January 8, 2021, the Court granted Zurich's cross-motion for summary judgment, as to the CGL issue, on Able's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *See* Order at 25-26. "The Court specifically held that the $500,000 [SIR endorsement] applied to both [Able] and any third-party which qualified as an additional insured under the . . . CGL Policies." Mot. at 4; *see also* Order at 21-25.

1  party may amend its pleading only with the opposing party's consent or the court's leave." Fed.
2  R. Civ. P. 15(a)(2). While "the grant or denial of an opportunity to amend is within the discretion
3  of the District Court," *Foman v. Davis*, 371 U.S. 178, 182 (1962), Rule 15 states that courts
4  "should freely give leave when justice so requires," Fed. R. Civ. P 15(a)(2). Leave to amend is to
5  be granted unless considerations "such as undue delay, bad faith or dilatory motive on the part of
6  the movant, repeated failure to cure deficiencies by amendments previously allowed, undue
7  prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of
8  amendment" counsel otherwise. *Foman*, 371 U.S. at 182; *see also Sonoma Cnty. Ass'n of Retired*
9  *Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (stating that district courts may deny
10 leave to amend "only if there is strong evidence" of one or more *Foman* factors).
11     The Ninth Circuit has held that while "leave to amend is not to be granted automatically,"
12 *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990), "[r]equests for leave to amend
13 should be granted with 'extreme liberality.'" *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567,
14 574 (2020) (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009)). In weighing
15 the *Foman* factors, "prejudice to the opposing party carries the most weight." *Id.* (citing *Eminence*
16 *Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). "Absent prejudice," therefore,
17 "or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under
18 Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052 (emphasis in
19 original). The party opposing amendment "bears the burden of showing prejudice." *DCD*
20 *Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987).
21                    **IV.    DISCUSSION**
22 A.    Undue Delay
23     Able filed its First Amended Complaint in October 2019, after Zurich removed this case
24 from state court that same month. *See* Mot. at 3. Zurich then filed its Answer and Counterclaim
25 in November 2019. *See id.* The parties' cross-motions for summary judgment on the CGL issue
26 (*i.e.*, whether the SIR endorsement extended to additional insureds as well as Able) were filed in
27 the fall of 2020, and the Court issued its order on the cross-motions in January 2021. *See* Order at
28 1-2. Litigation over the Blackwell Claim had been proceeding since at least March 2019. *See*

3

Branse Decl. at 4.  That matter was resolved via settlement on May 29, 2019, "with Able contributing $100,000" and "Zurich contributing $190,000" to an aggregate settlement of $290,000.  *See id.*, Opp'n at 3.  According to Able, Zurich indicated to Able's agent on May 30, 2019—the day after the Blackwell Claim settled—that Zurich's contribution to the settlement was made on a reservation-of-rights basis, whereby Zurich retained its ability to seek reimbursement from Able if the SIR endorsement was later found to apply to additional insureds.  *See* Opp'n at 3.  Able thus argues that "Zurich was aware of all the facts supporting its reimbursement claim . . . a full six months before Zurich filed its answer and counterclaim" in November 2019, and that Zurich has offered "no valid reason for [its] delay."  Opp'n at 8.

While Zurich was indeed aware of the Blackwell Claim when it filed its Answer and Counterclaim, any delay by Zurich in bringing its motion to amend was not undue.  As Zurich points out, the viability of its proposed reimbursement claim was dependent on the Court ruling in Zurich's favor on the cross-motions for summary judgment.  *See* Mot. at 5-6.  That decision was not rendered until January 2021.  *See DCD Programs*, 833 F.3d at 187 (holding that plaintiffs' decision to name a defendant only after "they had sufficient evidence of conduct upon which they could base claims of wrongful conduct" constituted "a satisfactory explanation for their delay," and so did not evince undue delay or bad faith).  Once the Court issued its order, Zurich promptly moved to amend within approximately two months (and only after Able indicated that it was unwilling to stipulate to the proposed amendment in February 2021).  *See* Branse Decl. at 4-5.

Zurich therefore did not delay unreasonably in moving for leave to amend its Answer and Counterclaim when it did.[2]

---

[2] Able's additional argument that Zurich's motion is untimely because the parties had earlier "agreed to a selection of matters that they considered to be representative of the issues related to the application of the SIR" endorsement is unavailing.  *See* Opp'n at 8.  As the parties' cross-motions for summary judgment made clear, Able and Zurich there discussed six underlying personal-injury claims against Able's additional insureds (out of a total of fifty-five identified in Able's complaint) that the parties believed "exemplary" for framing the SIR issue.  *See* Docket No. 59 at 11-17, Docket No. 67 at 6-10.  In focusing on these six claims, the parties did not suggest that the Court's ruling on the SIR question would resolve *every* conceivable issue relating to the underlying actions, or that no additional discovery would be necessary for any of them.

4

B.  Prejudice

Able argues that it would be prejudiced by the proposed amendment in two ways. First, Able contends that it has "already incurred substantial litigation costs" in this case and that it would be put "through the time and expense of continued litigation" if the motion were granted. Opp'n at 9 (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989)). Second, and "[m]ore importantly," Able asserts that permitting leave to amend "will reopen discovery into [CGL policy] issues that were meant to be resolved by the earlier motion[s]" for summary judgment. *Id.* at 10. In pursuing this argument, Able contends that "[f]act discovery related to [the CGL and SIR] issues closed on January 20, 2020," and that reopening it would "disrupt[] the Court's schedule." *Id.*

Able's arguments are unpersuasive. Unlike cases in which a party moved to amend only after prior failed attempts to cure defective pleadings, *see, e.g.*, *Ascon Properties*, 866 F.2d at 1160, Zurich "has made no prior attempt to amend its Answer and Counterclaim" and Able "has not incurred any litigation costs to combat a prior attempt to plead the same claim."[3] *See* Docket No. 88 ("Reply") at 6.

As to discovery, Able's insistence that "fact discovery related to [the SIR and CGL] issues closed on January 20, 2020," is mistaken. Able cites to the Court's order of December 31, 2019, but that order (approving a stipulation by the parties) merely provided that initial disclosures were to be exchanged, and a discovery plan submitted, by January 20, 2020. *See* Docket No. 29 at 3. The Court's subsequent case management and pretrial order of January 31, 2020, then set filing deadlines and a hearing date for the parties' cross-motions for summary judgment but "did not include a discovery cut-off date." *See* Reply at 6; *see also* Docket No. 39 (comprising the order). Able has pointed to no filing in this case that terminated discovery related to *all* CGL-related issues before the present time. On the contrary, the parties' stipulation of March 18, 2021,

---

[3] Further, Able's contention that Zurich's "proposed counterclaim presents a legal issue that should have been litigated at the time the other CGL related issues were" makes little sense. *See* Opp'n at 10. The Court's ruling on the SIR question applies with as much force to Zurich's reimbursement claim as to the other underlying personal-injury actions in this case, and the unique issues the new claim raises, *see infra*, could not have been efficiently litigated as part of the parties' summary-judgment motions on that issue.

5

provides that fact-witness discovery does not cut off until August 1, 2021. *See* Docket No. 83 at 2. And the same stipulation begins by noting that the parties were then "engaging in discovery of the workers' compensation issues *and potentially a final [CGL] reimbursement issue* which remain in the action." *Id.* at 1 (emphasis added).

It is true that Zurich's proposed reimbursement claim raises new questions of fact relating to the Blackwell Claim, *see infra*, and that some additional discovery will likely prove necessary. But the parties have at least two more months before the fact-witness discovery cutoff on August 1, 2021, and any supplemental discovery "can be limited to issues related to settlement of the Blackwell Claim." *See* Reply at 7 (emphasis removed). Further, the Court has yet to set a trial date in this case. In such circumstances, a slight expansion of the scope of the litigation and discovery is not unreasonable. *Cf. Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of leave to amend where plaintiff sought to add new causes of action requiring additional discovery "only several days before the discovery cut-off and less than three months before trial was to commence").

Able has therefore failed to carry its burden of proving that it would suffer prejudice if Zurich's motion for leave to amend were granted. *See DCD Programs,* 833 F.2d at 185.

C.      Bad Faith & Futility

Able essentially contends that Zurich's motion "was brought in bad faith because [Zurich] cannot prevail on the substantive merits of the reimbursement claim." *See* Reply at 9. Able's opposition to the proposed amendment on the grounds of bad faith thus dovetails with its assertion that granting leave to amend would be futile.

The gravamen of Able's argument is that Able was not responsible for Ms. Blackwell's injuries and that Zurich compensated her "on its own behalf" when it failed to settle her claim on a proper reservation-of-rights basis.[4] *See* Opp'n at 3; *see also id.* at 4-8 (discussing Zurich's

---

[4] In Able's telling, Ms. Blackwell tripped and fell in the parking garage of a property owned by Piedmont where repairs were being performed, and she sustained serious injuries to her lower back. Opp'n at 2. Able maintains that its maintenance-services contract with Piedmont did not extend to the repair work in the parking garage, and that Able "had no involvement" with that work. *See id.* Able thus "took a 'no pay' position with respect to" the Blackwell Claim, believing that neither the company nor its employees had any liability for the accident. *Id.* at 3. Able

purported concern about its "own independent liability" for the accident). Zurich, for its part, maintains that it settled the Blackwell Claim on Able's behalf "pursuant to a reservation of rights[,] including the right to seek reimbursement of [the settlement] amount from Able." Branse Decl. at 4; *see also id.* at 32, 34 (stating, in Zurich's proposed Amended Answer and Counterclaim, that the $190,000 was paid "subject to a full reservation of rights"). The parties' competing accounts thus raise questions of fact regarding, for example, their communications prior to the May 29, 2019, agreement with Ms. Blackwell and their respective understandings of Zurich's role in the settlement negotiations. Additionally, the parties' divergent accounts suggest that this Court may be called on to interpret the services contract between Able and Piedmont to resolve the question of whether Able was potentially liable for Ms. Blackwell's claim against itself and Piedmont.

Given these disputed issues of fact and potentially disputed questions of contractual interpretation, Zurich's motion for leave to amend cannot be considered futile. The Ninth Circuit directs courts to permit amendment where doing so would lead to the assertion of a "colorable federal claim." *See DCD Programs*, 833 F.2d at 188. Movants should thus "be granted leave to amend unless it appears beyond doubt" that the amended pleading "would also be dismissed for failure to state a claim." *See id.* (internal quotation omitted). Assuming the truth of Zurich's factual allegations at this stage, as the Court must, Zurich has stated a plausible claim for reimbursement. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As for Able's argument that Zurich's motion has been brought in bad faith, Able adduces no evidence beyond Zurich's alleged misconduct in settling the Blackwell Claim. Able does not allege, for example, that Zurich seeks "to destroy diversity and to destroy the jurisdiction of th[e] court" by adding a non-diverse defendant. *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805

---

nevertheless decided to contribute $100,000 to resolve the matter. *See id.* at 4. The following day, Zurich allegedly informed Able's agent "that Zurich's contribution [of $190,000] to the settlement was made under a reservation pursuant to the terms and conditions set forth within the SIR endorsement." *Id.* at 3-4. Able insists, however, that Zurich did not obtain Able's consent before agreeing to pay the additional $190,000 on Able's behalf, as the CGL policy required, and that Zurich's communications to Able on May 30, 2019, represented "an attempt by [Zurich] to back in a reservation of rights after the fact." *See id.* at 6-7, 4.

7

(9th Cir. 1987). Nor does Zurich's request to amend "smack[] of gaming the Court and opposing party" or of "shifting sands litigation tactics." *See Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011) (internal quotation omitted).

The Court therefore finds that Able has failed to establish that Zurich's motion to amend should be denied on the grounds of either futility or bad faith.[5]

## V.     CONCLUSION

For the reasons given above, the Court **GRANTS** Zurich's motion for leave to amend its Answer and Counterclaim to include a cause of action for reimbursement of amounts paid to settle the Blackwell Claim. Zurich's Amended Answer and Counterclaim is to be filed within fifteen (15) days.

This order disposes of Docket No. 79.

**IT IS SO ORDERED**.

Dated: June 1, 2021

_____
EDWARD M. CHEN
United States District Judge

---

[5] As Zurich's proposed amendment to its Answer and Counterclaim would be its first, the parties do not address the remaining *Foman* factor, "repeated failure to cure deficiencies by amendments previously allowed." *See Foman*, 371 U.S. at 182.

8